ODOM, Justice.
 

 Act No. 12, Second Extra Session of 1934, prohibits lotteries, the sale of lot
 
 *1043
 
 tery tickets, and the keeping in or about any premises of lottery offices.
 

 The defendant was prosecuted under that act on three counts, as follows: (1) That he did have in his possession with intent to sell ■ and otherwise dispose of certain lottery tickets, etc.; (2) that he did unlawfully keep a lottery office and a lottery shop and assist in keeping a lottery office and shop; and (3) that he did willfully and unlawfully act as agent for a lottery.
 

 Defendant moved to quash the indictment on the ground that the act under which the prosecution was brought is unconstitutional. The motion to quash was overruled and defendant reserved bill No. 1.
 

 He was tried and acquitted on counts No. (1) and (3) and was convicted on count No. (2). The court imposed a fine of $350, and in default of the payment of the fine, defendant was ordered to serve one year in the parish prison. Defendant filed a motion for a' new trial, which was overruled, and this appeal followed.
 

 It is contended that Act No. 12, Second Extra Session of 1934, is unconstitutional, first, because it violates section 12, art. 1, of the Constitution 1921, which provides that:
 

 “Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.”
 

 This statute permits the imposition of a fine of not less than $200 nor more than $3,000 or imprisonment of not less than one year nor more than three years, or both a-t the discretion of the court, as punishment for the violation of its provisions, and the contention is that the infliction of such punishment as the áct authorizes would be “cruel and unusual” and therefore prohibited by the Constitution.
 

 In Louisiana it is the exclusive province of the Legislature to say what acts shall constitute crimes and misdemeanors and to adopt laws prohibiting the commission of them. The Legislature is vested with full power and authority also, subject to constitutional restrictions, to provide punishment for statutory crimes committed subsequent to the adoption of the laws defining them. The only restrictions imposed by our Constitution upon the Legislature concerning the punishment which may be inflicted for the violation of criminal statutes are that the fines shall not be “excessive” and that the punishments shall not be “cruel and unusual.”
 

 The question raised by defendant is whether the Legislature, by fixing the punishment for a violation of the provisions of the act, has gone beyond constitutional restrictions.
 

 We do not think so. The minimum fine is $200 and the maximum is $3,000. The courts are given wide latitude as to the amount of the fine which may be imposed. What constitutes an excessive fine
 
 *1045
 
 for the violation of a penal statute depends in part upon the nature and character of the offense committed and in part upon the ability of the defendant to pay. A fine which in one case would be only slight punishment, because easily paid, might in another case be excessive, because its payment would be ruinous to the convict. The imposition of a fine of $200, which is the minimum under this statute, would constitute little if any punishment at all to a man of means, and even $3,000, the maximum, might not be at all embarrassing to him. On the contrary, the imposition of the minimum fine might be severe punishment to another and the maximum would be impossible for him to pay. The Legislature therefore wisely vested in the courts wide discretion as to the amount of the fine. In view of the fact that a fine of $3,000, the maximum which may be imposed by the statute, might be easily paid and therefore little punishment for persons of means, we think the statute is not amenable to the objection that it permits the imposition of an excessive fine.
 

 As to what constitutes “cruel and unusual” punishments, we quote the following from R. C. L., vol. 8, § 271, page 262:
 

 “It may be said to be fairly well settled that constitutional provisions as to cruel and unusual punishments are aimed at the form or character of the punishment rather than its severity in respect to duration or amount, and apply to punishments which never existed in this country or which the public sentiment must be regarded as having condemned as ‘cruel’ or which if ever employed at all have become altogether obsolete.”
 

 The same rule is stated in different language in 12 Cyc. 963, as follows:
 

 “What shall in any particular case constitute cruel and unusual punishment under the constitutional' provisions, depends upon the facts and circumstances of the punishment itself, and upon the nature of the act which is to be punished. The prohibition of the Constitution would unquestionably apply to punishments which amount to physical torture, or to such as would by their character shock the minds of persons possessed of ordinary feelings of humanity.” -
 

 In ancient times under the laws which prevailed in some countries, such punishments as drawing and quartering, burning at the stake, mutilation of limbs, death by slow starvation in prison, and the like were inflicted upon condemned persons. Such punishments would likely be regarded as “cruel and unusual” by any court in the civilized world today. But punishment by fine and imprisonment is not per se cruel and unusual and is not so regarded by either the federal or state courts.
 

 The second objection raised to the statute is that the penal clause is confusing and ambiguous in that section 2 of the act, which prescribes the penalty, is not framed in terms sufficiently clear to show what the intended penalty should be. Spe
 
 *1047
 
 cifically it is alleged that the act “fails to clearly and definitely state whether the minimum term of imprisonment shall be one' day, one month or one year,” and “it fails to clearly and definitely state whether the minimum money fine shall be two hundred dollars or two hundred cents or two hundred anything of value.”
 

 Section 2 of the act provides that any one convicted of the violation of any of its provisions shall be fined “not less than two hundred nor more than three thousand dollars or be imprisoned not less than one nor more than three years,. or both fine and imprisonment, at the discretion of the court”
 

 Counsel contend that inasmuch as the word “dollars” does not follow the words “two hundred,” it is impossible to tell whether the minimum fine provided for is $200 or 200 cents. There is no merit whatever in this suggestion. It was clearly intended that the units of measure of money and time were dollars and years, respectively, since those units are mentioned in the same sentence in connection with “three thousand” and “three,” respectively. It is evident that the “two hundred” and “one” also refer to dollars and years. This construction is what is known as an ellipsis, defined by Webster’s New International' Dictionary (1935) as “an omission from a construction of one or more words which are evidently understood but must be supplied to make the expression grammatically correct,” or, as defined by C. H. Ward, in his Grammar for Composition, as “the omission of words that are easily understood, that are not necessary to express the meaning, but that are necessary for grammatical completeness.” Such constructions are found in all literature, both ancient and modem, and found in numerous instances in our Revised Statutes. For instance, section 807, R. S., provides that whoever shall feloniously administer or cause to be administered any drug to a woman for the purpose of procuring a premature delivery, shall > on conviction be imprisoned at hard labor “for not less than one nor more than ten years.” Section 791 provides that whoever shall shoot,- stab, cut, strike, or thrust any person with a dangerous weapon with intent to commit murder shall suffer imprisonment at hard labor or otherwise “for not less than one, nor more than twenty-one years.”
 

 A casual reading of the penal statutes of this state will disclose that there are. innumerable instances in which the imposition of fines and imprisonments is expressed in exactly the same way as in the statute now under consideration. So far as we know, such statutes have never before been misunderstood by members of the bar.
 

 The contention made by counsel is too technical and unreasonable to merit' serious consideration.
 

 Bill of exceptions No. 2 was reserved to the ruling of the court overruling defendant’s motion for a new trial. The
 
 *1049
 
 sum and substance of this motion is that the state failed to produce sufficient evidence to sustain the conviction; in other words, that the judgment of the court is not supported by the evidence.
 

 It is not alleged or contended that the state failed to produce any evidence. On the contrary, defendant’s motion itself shows that there was evidence adduced by the state. The question whether the evidence adduced was sufficient to support a judgment of conviction is one with which this court has nothing to do. We have stated repeatedly and now reiterate that motions for a new trial, .which merely set out that the judgment or verdict is contrary to the law and the evidence, or that there was insufficient evidence to support a judgment or verdict of conviction, present nothing for review.
 

 The conviction and sentence appealed from are affirmed.