**Sherman T. IRWIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 41234.

Court of Criminal Appeals of Texas.

May 15, 1968.

Rehearing Denied July 10, 1968.

Second Rehearing Denied Oct. 16, 1968.

Certiorari Denied April 21, 1969.

See 89 S.Ct. 1454.

Jack J. Rawitscher, Dixie & Schulman, Houston, Clayton Monroe, Livingston, for appellant.

Charles Turner, County Atty., Livingston, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The conviction is for keeping a policy game; the punishment, two years.

■ Ground of error No. 4 is that the trial court reversibly erred in failing to suppress evidence obtained under the alleged search warrant which the appellant contends was illegally issued and is invalid.

The affidavit for the search warrant and the warrant exhibited to the judge are not shown in the transcript of the evidence, and do not appear among the exhibits in the case. Appellant attached to his motion to suppress evidence a purported copy of an affidavit and warrant. Such instruments cannot be considered in reviewing the ground of error presented. Doby v. State, Tex.Cr.App., 383 S.W.2d 418. For the

reason pointed out, ground of error No. 4 does not reflect error.

■ In ground of error No. 1 the appellant contends that the trial court reversibly erred in failing to charge the jury upon the law of extraneous offenses in that, it did not instruct the jury not to consider such extraneous offenses unless they believed they had been proven beyond a reasonable doubt.

Omitting the formal parts, the indictment alleges that the appellant: "On or about the 7th day of February, A. D. 1965, * * did then and there unlawfully keep and exhibit for the purpose of gaming, a policy game."

The testimony of the state reveals that Texas Rangers Rundell and Rogers together with other officers found the appellant at home when they went to his residence which was located in a rural area in Polk County, on Sunday, February 7, 1965, shortly after Russell Bond, bookkeeper for T and L Policy Company, had arrived; that said company was owned and operated by the appellant; that in appellant's house the officers found a tan suit case (state's exhibit No. 2), bundles of tear out sheets containing plays for several previous days, over $13,000 in money, hit slips, "squirrel cage," and other items of policy paraphernalia; that a large number of the hit slips had been used on at least eight different days before February 7, 1965; and also other slips which could be used in the future. The evidence further shows that these articles were adaptable to and could be or had been used in the operation of a policy game.

Texas Ranger Rundell testified on direct examination, in part, as follows:

"Q (State's Attorney, continuing): I will ask you this: When was the last time that you had an occasion to have a conversation with the Defendant, Sherman Irwin?

"A Well—

"Q  I will ask you whether or not during the year of 1966 in or about the month of February or March you had occasion to talk to the Defendant, Sherman T. Irwin?

"A  I did.

"Q  Where was that?

"A  One time it was at the Ben Milam Hotel in Houston, Texas, and the other time was on the parking lot of the Hovas Furniture Company, there in Houston, Txas.

"Q  What was the nature of the conversation as relating to whether or not Mr. Irwin was engaged in any sort of a business at that time?

"Appellant's Attorney: We object to that, your Honor, on the basis that first of all, it is too remote. Second, he was not advised of his rights and any statement he would have made under those circumstances would be inadmissible.

"The Court: Overruled.

"Appellant's Attorney: Note our exception.

"A  (The Witness, continuing): He stated to myself and my partner that he had been operating a policy game for over thirty years.

"Q  Would that be over the past thirty years?

"A  Yes, sir.

"Q  Did he tell you under what name he operated?

"A  He stated he first opened up under the name, I believe, of the G. and W. and then later on it was closed down and he opened up under the T. and L., which he had been operating since.

"Q  That conversation took place in February or March of 1966?

"A  Yes, sir; it did.

"Q  All right, and that occurred there in the City of Houston?

"A  Yes, sir.

"Q  At such time he was not under arrest?

"A  No, sir; he was not.

"Q  All right; had you met him at his request or at your request?

"A  At his request.

"Q  And the statements he made to you there were voluntarily made by him?

"A  Yes, sir.

"Q  During the course of your conversation?

"A  Yes, sir."

The state called four witnesses: Herman Munson, the lessor of the premises where the appellant resided; Texas Rangers Rundell and Driskell; and Melvin Hill, an employee of the appellant.

The appellant did not testify or offer any testimony in his behalf.

Melvin Hill testified that he was employed by the appellant from June 18, 1963, to June, 1966, and was working for him in January and February, 1965; that the appellant during this time owned and operated a policy game under the name of T and L Company, and that he worked for him as a manager or field man; that he had ten or eleven writers working under him taking bets on numbers; that he collected the money from the writers who had accepted bets on T and L policy game and delivered it to R. I. Bond, who began working as a bookkeeper for the appellant in June, 1964, in the operation of T and L Company, and Bond gave him the money to give the writers to pay the winners; that sometime about January, 1965, he accompanied Bond in his camper truck to appellant's residence; that on Sunday, January 31, 1965, Bond went with him in his (Hill's) car from Dickinson, Texas, to the appellant's residence in Polk County,

Texas, and that they took a brown suit case (state's exhibit No. 2) with them which was very heavy; that there were writers, players and pickup men in Galveston County, and that he had $750 in money for the purpose of operating a policy game when he was arrested February 8, 1965 in Galveston County.

The series of segregated acts and the material in evidence, taken together, are by their nature a connected course of operation which go to make up and comprise the keeping of a policy game, and when they are considered along with the statements of the appellant in February or March, 1966, that he had been operating a policy game for over the past thirty years, it is concluded that the evidence is sufficient to support the conviction of keeping for the purpose of gaming, a policy game, in Polk County, Texas. Griffey v. State, 170 Tex.Cr.R. 577, 342 S.W. 2d 582. And further, that such acts and material are not extra, beyond, or foreign to the offense of keeping a policy game, and that it was not necessary to apply the burden of proof to each of the acts which could be considered on the trial for such offense. Ground of error No. -1 is overruled.

◼ Ground of error No. 2 is that the trial court reversibly erred in admitting testimony that the appellant had the largest policy game in operation.

The testimony of Ranger Driskell reflects that he was experienced in the organization, handling and operation of policy games, and that there were different size games; that since June 18, 1963, he had been familiar with the operation of the T and L policy game (appellant's), and also, the operation of other policy games during that time and that in his opinion the T and L policy game was the largest policy game in operation.

In light of the above testimony, the nature and extent of the other evidence, and the statements of the appellant that he had been operating a policy game over the past thirty years, it is concluded that no reversible error is shown.

◼ Error is urged on the ground that the trial court failed to charge upon the law of principals.

The summary of the evidence herein is sufficient to show that the refusal to so charge was not error.

The judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

By Supplemental Transcript the trial court has forwarded to this Court the affidavit for the search warrant and we will now discuss the grounds of error relating thereto not considered in our original opinion.

◼ Appellant's first ground of error in regard to the affidavit is that it was made in bad faith. He predicates this contention on the ground that the affidavit alleges that the place sought to be searched was "a place where implements, devices, equipment and paraphernalia" used in a "policy game" are kept, whereas Officer Rundell testified that he expected someone to bring policy paraphernalia to appellant's address on the afternoon he executed the warrant. The good faith of the officers' affidavit could not be questioned since during the search of the premises in addition to the paraphernalia brought there that afternoon they found an "implement, device or equipment" in the form of a policy cage which could not have been brought in the suit case which arrived later in the day.

◼ Appellant next contends that the affidavit for the search warrant violated his constitutional rights under the Fifth Amendment of the United States Constitution because it contained, among other allegations of probable cause, this sentence:

"The affiants have knowledge and know that Sherman T. Irwin has purchased Federal Wagering Occupation Stamps from the Austin District to cover a period from July 1, 1964 through June 30, 1965." His contention relies upon the two recent opinions of the Supreme Court of the United States in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906.

Without discussing the question of the retroactivity of those holdings, we do observe that in both cases the accuseds refused to buy the Wagering Occupation stamps and the Supreme Court upheld their refusal on the ground that to require them to make known to the public the fact that they were preparing to violate State law would be an abridgment of their Fifth Amendment right not to incriminate themselves. Here appellant did not rely upon his Fifth Amendment right and purchased the Wagering stamp, and thus waived any right he might have had not to incriminate himself. This ground of error is overruled.

■ He next contends that the affidavit is defective because it contains no statement that the affiants or their informers spoke with their own personal knowledge. The affidavit clearly contained recitations of facts known to the affiants.[1] The omission of the word "personal" preceding the

word "knowledge" does not vitiate the affidavit, as we view the holding of the Supreme Court of the United States in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684. Viewing the affidavit as a whole we find it sufficient to show probable cause.

■ His next ground of error is that the court erred in not requiring the State to disclose the names of the affiants' informers. Appellant points to no fact which would intimate that the informers had taken a material part in the commission of the offense, or had been present when the offense was committed, or might have been a witness to its commission. We adhere to our recent holding in Acosta v. State, Tex.Cr.App., 403 S.W.2d 434, in which we discussed the holdings of the Supreme Court of the United States in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, and Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887.

■ Though not discussed in our original opinion we will now overrule appellant's ground of error that the trial court erred in failing to disqualify himself at the trial because he acted as the magistrate who issued the search warrant. We do not agree that this case comes within the rule announced by the Supreme Court of the United States in In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942.

---

1. "We have recently received, within the last thirty days, information from two credible persons who have furnished us reliable information on several occasions within the past five years. The information which we have received is that Sherman T. Irwin said that he had on the above described premises a duplicating machine and equipment on which he was currently producing and printing policy slips for the use and purpose of gaming and carrying on a policy game; and that there was on these premises other necessary books, implements, equipment and paraphernalia for the carrying on of a policy game.

"We were further informed by the same sources that the said Sherman T. Irwin had in his employment more than

a dozen persons engaged in the carrying on of policy games.

&ast; &ast; &ast; &ast; &ast;

"We the affiants, also have knowledge that the said Sherman T. Irwin has been engaged from time to time for the past twenty years, in the illegal occupation of keeping and exhibiting a policy game.

"An intermittent surveillance of the above described premises carried on for a period of the last three or four weeks, has revealed Melvin Hill, also known as Percy Hill, and Russell I. Bond, both residents of Galveston County, Texas, and both known to the affiants to be involved in carrying on and keeping and exhibiting of policy games, coming upon and leaving the above described premises."

In that case what the court heard while acting as a "one man grand jury" went to the guilt or innocence of the accused. In the case at bar the recitations in the affidavits were reduced to writing and became a public record. These recitations were the only thing the trial court or this Court could consider. They are before us now for review and we hold them to be sufficient.

In addition to what we said in our original opinion we now point out that in appellant's objections to the court's charge he does not give the court any intimation or notice as to which testimony he now refers to as "extraneous offenses". In Garver v. State, 158 Tex.Cr.R. 585, 258 S.W.2d 812, we said "If an accused is dissatisfied with the court's charge, he should make his objections in specific terms, thereby clearly informing the court of what he wants or does not want in the charge."

Appellant's motion for rehearing is overruled.