UNITED STATES, Appellee,

v.

Alanson P. CANSDALE, Airman, U. S. Air Force, Appellant.

No. 32894.
ACM S–24352.

U. S. Court of Military Appeals.

July 2, 1979.

For Appellant: *Major Bruce R. Houston* (argued); *Colonel Robert W. Norris* (on brief).

For Appellee: *Major Alvin E. Schlechter* (argued); *Colonel Julius C. Ullerich, Jr.* (on brief).

Opinion of the Court

PERRY, Judge:

The appellant was convicted by special court-martial of dereliction of duty, making a false statement, larceny of government tools, and disorderly conduct, in violation of Articles 92, 107, 121 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 907,

921 and 934, respectively. He was sentenced to a bad-conduct discharge, forfeiture of $229 per month for 6 months, confinement for 6 months and reduction to the lowest enlisted grade. The convening authority reduced the period of confinement and forfeitures to 5 months but otherwise approved the findings and sentence. The United States Air Force Court of Military Review reversed the finding of guilty as to one charge but affirmed as to the remaining charges. The Court of Military Review thereupon reassessed the appellant's sentence, reducing the confinement portion to 4 months and the forfeitures to $200 per month for 4 months. *United States v. Cansdale*, 1 M.J. 894 (1976). This Court granted review to consider whether the convening authority was disqualified from reviewing the case since he had authorized the search which revealed the evidence leading to the appellant's conviction of larceny of government tools and testified at the trial concerning that authorization.

We are satisfied that the convening authority's appearance as a witness did not disqualify him. *United States v. Choice*, 23 U.S.C.M.A. 329, 49 C.M.R. 663 (1975). The Court of Military Review found that his testimony at trial did not conflict with prosecution evidence, and the parties agree with this determination. Our reading of the record convinces us that this view is correct.[1] We do not regard our decision in *United States v. Ward*, 1 M.J. 18 (C.M.A.1975), as requiring a different result. *Ward* was based on the existence of a conflict between the convening authority's testimony and the charge sheet which indicated the case had been referred to a different court from that stated in the testimony.[2]

Article 26(d), UCMJ, 10 U.S.C. § 826(d), disqualifies a judge who becomes a

---

1. *See Owens v. State*, 51 Ala.App. 50, 282 So.2d 402 (1973), *cert. denied*, 291 Ala. 794, 282 So.2d 417 (1973); *Coslow v. State*, 490 P.2d 1116 (Okl.Cr.App.1971); *Irwin v. State*, 441 S.W.2d 203 (Tex.Cr.App.1968), *cert. denied*, 394 U.S. 973, 89 S.Ct. 1454, 22 L.Ed.2d 752 (1969).

2. However, we observe that in fact there was no conflict since the testimony of the convening authority constituted an oral referral of charges which is proper-para. 37*c*, Manual for Courts-Martial, United States, 1969 (Revised edition)—and his testimony is equivalent to written confirmation. Thus, in fact there was no issue, and the precedential value of the decision is questionable.

witness for the prosecution. We have approved the decision in *United States v. Cardwell*, 46 C.M.R. 1301 (A.C.M.R.1973), that a military judge who granted authority to search is disqualified from presiding where a search warrant issued by him is admitted in evidence during a search contest, since at that point he becomes a witness for the prosecution. *See United States v. Wolzok*, 1 M.J. 125, 128 (C.M.A.1975). However, the only statutory disqualification of the convening authority concerns his being an accuser, which includes having "an interest other than an official interest in the prosecution of the accused." Articles 22(b), 23(b), and 1(9), UCMJ, 10 U.S.C. §§ 822(b), 823(b), and 801(9). Therefore, the matter is controlled by *Choice*.

■ If the convening authority were to be disqualified, it would be because no one should be required to pass on the validity of his own acts. *See United States v. Engle*, 1 M.J. 387 (C.M.A.1976). However, many cases approve the concept that a trial judge is not disqualified merely because he must rule upon the validity of a search conducted pursuant to a warrant issued by him. *United States v. Garramone*, 374 F.Supp. 256 (D.Pa.1974), *aff'd* 506 F.2d 1053 (3d Cir. 1974), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975); *State v. Pointer*, 135 N.J.Super. 472, 343 A.2d 762 (1975), *certification denied*, 69 N.J. 79, 351 A.2d 7 (1975); *State v. Brown*, 20 N.C.App. 413, 201 S.E.2d 527 (1974), *appeal dismissed*, 285 N.C. 87, 204 S.E.2d 21 (1974); *Owens v. State*, 51 Ala.App. 50, 282 So.2d 402 (1973), *cert. denied*, 291 Ala. 794, 282 So.2d 417 (1973); *Peaper v. State*, 14 Md.App. 201, 286 A.2d 176 (1972), *cert. denied*, 409 U.S. 987, 93 S.Ct. 342, 34 L.Ed.2d 253 (1972); *State v. Smith*, 113 N.J.Super. 120, 273 A.2d 68 (1971), *certification denied*, 59 N.J. 293, 281 A.2d 806 (1971); *Coslow v. State*, 490 P.2d 1116 (Okl.Cr.App.1971); *State v. Toce*, 6 Conn.Cir. 192, 269 A.2d 421 (1969), *certifi-*

cation denied, 158 Conn. 667, 259 A.2d 649 (1969); *Irwin v. State*, 441 S.W.2d 203 (Tex. Cr.App.1968), *cert. denied*, 394 U.S. 973, 89 S.Ct. 1454, 22 L.Ed.2d 752 (1969). The Court in *Smith* found no disqualification because issuance of "the warrant is *ex parte* and merely appraises the *prima facie* showing of probable cause." On the other hand, the challenge of the search "is adversarial, and the judge adjudicates all questions of law and fact posed on the challenge of the validity of the warrant." *State v. Smith, supra* at 78. It is inconceivable "that the judge . . . would 'permit his previous decision in the case to control him.' . . ." *State v. Toce, supra* at 423.

It has been held that a federal judge was not disqualified to pass on the validity of a state supreme court ruling in which he had cast the deciding vote as a justice of that Court;[3] that the validity of a city ordinance may be decided by a judge who had drafted the ordinance when he was city attorney;[4] and that no disqualification arises merely because the judge had taken earlier action based on *ex parte* information provided to the judge by the prosecutor.[5]

While a military judge cannot pass on the validity of his issuance of a search authorization because of a statutory disqualification, the absence of a similar disqualification of a convening authority means that the foregoing cases support the view that a convening authority is not necessarily disqualified merely because he issued the challenged search authority. Consideration must be given to the overall role of the convening authority in general.

■ The articles governing the convening authority's responsibilities were included in the part of the bill proposing the 1951 Code which dealt with appellate review, rather than the trial itself. 95 Cong.Rec. 5720 (1949); 96 Cong.Rec. 1356 (1950).

---

3. *Antonello v. Wunsch*, 500 F.2d 1260 (10th Cir. 1974).

4. *Williams v. Mayor and Council of City of Athens*, 122 Ga.App. 465, 177 S.E.2d 581 (1970).

5. *United States v. Jackson*, 430 F.2d 1113 (9th Cir. 1970).

Next, Article 60, UCMJ, 10 U.S.C. § 860, requires initial action "[a]fter a trial." While it is true, as noted in *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 137, 48 C.M.R. 751, 753 (1974), that the action of the convening authority sets the maximum limit on punishment for the remainder of the process, it is also true that even the convening authority's action is limited by the announced sentence. Article 64, UCMJ, 10 U.S.C. § 864. Also, every level of review is limited by the action of the lower level, Articles 65(b), 66(c), 67(d), UCMJ, 10 U.S.C. §§ 865(b), 866(c), 867(d), so the logic of *Dunlap* would extend even to this Court. Such a result is plainly not correct. Further, the *Dunlap* view continues, rather than rejects, the "notion that the court martial is really just a committee to advise the commanding officer what ought to be done by way of discipline." But, as Professor Edmund M. Morgan, Jr., has pointed out, "of course that is going by the board. There is no doubt about that."[6] Also, Senator Kefauver told the Senate that the *appellate* process proposed in the Uniform Code began with the convening authority.[7] While it will be shown that the convening authority is not, strictly speaking, part of the appellate process, he is definitely *not* a part of the trial process. Therefore, we must consider whether in fact the special court-martial convening authority is even required to pass on the validity of his act of authorizing the search. This will depend on whether the convening authority's action is a command or an appellate function.

■ The Uniform Code of Military Justice contemplates 2 different convening authorities—one who exercises general court-martial authority; the other who only exercises special court-martial authority. The former has the duty of supervising the latter. Only the former must receive the written advice of his staff judge advocate or legal officer before he may take action on a record of trial by general court-martial or by special court-martial where a bad-conduct discharge has been imposed. Articles 61 and 65(b), UCMJ, 10 U.S.C. §§ 861, 865(b). We recognize that one officer may have both functions. The legislative history of the 1951 Code provides valuable insight into the nature of his role.

It will be noted at the outset that in his letter transmitting the proposed Code to Congress, Secretary of Defense James Forrestal listed the convening authority's power over findings and sentence as an element of command.[8] Congressman Overton Brooks, in his explanation of the bill for the House Committee on Armed Services, also considered the "power to set aside findings of guilty and modify or change the sentence" as one of the "elements of command." He pointed out that "we have included numerous restrictions on command." Among those was the requirement "that the staff judge advocate of the convening authority must examine the record of trial for sufficiency before the convening authority can act on a finding or sentence, .  ." 95 Cong.Rec. 5721. The language of Articles 61 and 65(b), *supra*, reveal that this comment is limited to general courts-martial cases as well as those special courts-martial involving a punitive discharge. The real purpose of including the convening authority in the review process is revealed by the following colloquy:[9]

> Mr. Brooks. Furthermore, I think your commentary goes far beyond that article because in the last sentence of your commentary you say "he may disapprove a finding or a sentence for any reason."
>
> Mr. Larkin. That is right. That is the intention.
>
> Mr. Brooks. Which means that he can just disapprove it.
>
> Mr. Larkin. That is right.
>
> Mr. Brooks. He doesn't have to read the record or anything else. He can just say disapproved and it is through.

6. Index and Legislative History, Uniform Code of Military Justice, 1951 (hereafter cited Legislative History), Senate Hearings, p. 49.

7. 96 Cong.Rec. 1362 (1950).

8. U.S.Code Cong.Service, 81st Cong.—2d Sess., p. 2265.

9. Legislative History, House Hearings, p. 1184.

Mr. Larkin. That is right. In the normal course of the review of the case he looks to its legality and the establishment of the facts and the appropriateness of the sentence and he shouldn't approve anything that is wrong or illegal, but he can disapprove it if it is illegal, if it is wrong, and for any other reason.

Mr. Brooks. Or for no reason at all?

Mr. Larkin. Or for no reason at all.

Mr. Rivers. That is right.

Mr. Larkin. The classic case that I think General Eisenhower stated in his testimony before your subcommittee last year was that even though you might have a case where a man is convicted and it is a legal conviction and it is sustainable, that man may have such a unique value and may be of such importance in a certain circumstance in a war area that the commanding officer may say "Well he did it all right and they proved it all right, but I need him and I want him and I am just going to bust this case because I want to send him on this special mission."

He has the right to do that. It is that free rein—all of which operates to the advantage of the accused—

This statement by Mr. Smart provides further evidence to support this view: [10]

Now this particular article here brings up a phase of command control that operates to the benefit of the accused.

I well remember General Collins' testimony . . . when he talked about his authority, as of that time, to empty the whole guardhouse if he wanted to. He had a bunch of people out there who had been convicted. They were getting ready to go to combat and he wanted to give them a chance to work themselves out from under a serious conviction.

He suspended their sentences and let them all go back to combat. If they made good he remitted the entire sentence. Now this permits the convening authority to do the very same thing. That is the intent.

Congressman Rivers, the ranking majority member of the Armed Services Committee, discussed the "rights" enjoyed by servicepersons. He specifically noted as one of those "rights," the review of "the sentence of every court" by the convening authority "with full right to reduce the sentence in any amount, even to the extent of dismissing the case." 95 Cong.Rec. 5729. He said nothing else about the convening authority's role. Thus, Congressman Rivers viewed the convening authority's post-trial role as a limited one. To him, sentence review was the most important aspect of the convening authority's role.

Regarding the convening authority's role in a legal review, Professor Morgan pointed out, as to the general court-martial authority: [11]

The convening authority . . . is the purely military man. He may have no legal training at all. His staff judge advocate will usually have legal training and he has to ask the advice of the staff judge advocate. There again, he does not have to follow the advice, but the advice of the staff judge advocate becomes a part of the record so that it will thereafter go up with the record.

The observation that the convening authority most likely would have no legal training also applies to the special court-martial convening authority. For this reason and because of the command function, Professor Morgan made these comments concerning the role of the convening authority: [12]

We had preserved, we think, a fair balance between the disciplinary notion and the administration of justice, and . . we put enough of a check on command control when we had the review in the Judge Advocate General's department, which is far away from the convening authority ordinarily, and that can review law, facts, and the sentence, and then we have a review on the law.

---

10. *Id.* at 1185.

11. Legislative History, Senate Hearings, p. 41.

12. *Id.* at 55–56.

Professor Morgan also told the Senate Committee:[13]

On the question of restriction of command control, we felt that when the board of review . . ., which is so far removed from any control of the convening authority, had power to handle law, fact and sentence, that that eliminated a great part of the evils of command control.

Finally, the colloquy between Mr. Larkin and Mr. Elston adds further support to viewing the convening authority's role as limited:[14]

Mr. Larkin. Well, the notion would be, I take it, in such event if he does not order a rehearing he shall dismiss the charges or send it on for review? Is that your notion?

Mr. Elston. Yes, I could conceive of the case where he does disapprove of it, but he may feel he is not a lawyer.

Mr. Larkin. Of course he must consult, you understand, with the staff judge advocate.

Mr. Elston. Even so, he might figure that it is a case that ought to be reviewed by some higher authority than himself. It seems to me he should have the alternative of letting the higher court review the case or sending it back for a rehearing.

Why send it back for another hearing and a hearing that will involve additional time and go over the same evidence again when perchance the upper court may disagree with the convening authority?

Mr. Larkin. Of course, he can send it up, if he is in doubt, by approving it.

Mr. Larkin's final comment strongly supports the view that the convening authority himself is not concerned with the legalities of the case.

Additional support for this view was provided by Senator Kefauver. In listing 11 "provisions designed to insure a fair trial," he did not mention review by the special or general court-martial authority, but he did refer to "automatic review . . . for errors of law and of fact by a board of review . . ." Regarding special courts-martial, he mentioned the "[r]eview by judge advocate." 96 Cong.Rec. 1355–56.

Further support for this view is provided by paragraph 85c, Manual for Courts-Martial, United States, 1969 (Revised edition), which recognizes that normally "the convening authority should accept the opinion of his [legal advisor] as to the effect of any error or irregularity respecting the proceedings, as to the adequacy of the evidence, and as to what sentence can legally be approved." If, however, a disagreement arises, a procedure for forwarding the record to the Judge Advocate General for advice is provided. This strongly supports the view that the convening authority is not expected to make his own legal determinations. Paragraph 85c can only refer to a convening authority who exercises general court-martial authority, since that officer is the only one required to obtain a legal opinion prior to taking action. Article 61, *supra*. Of necessity, the special court-martial convening authority can be expected to do no more than his superior, especially where there is nothing to indicate the basis upon which he acts on matters of law.

■ The review process which the Code has established provides final proof that this conception is correct. On matters of law, the trial judge's ruling is subject to review by the staff judge advocate to the general court-martial authority (*see* para. 85c, supra), as well as the Court of Military Review and this Court.

■ The real question is whether the fact that the special court-martial convening authority authorized the search would deprive the accused of "his best opportunity for relief," which we recognize "is at the convening authority's level." *United States v. Lindsey*, 23 U.S.C.M.A. 9, 48 C.M.R. 265 (1974). We have rejected a holding by the board of review that disqualification of the

**13.** *Id.* at 45.

**14.** Legislative History, House Hearings, p. 1182.

convening authority was not prejudicial because of review by the general court-martial authority. *United States v. Hicks*, 18 U.S.C.M.A. 38, 39 C.M.R. 38 (1968). But *Hicks* involved a grant of immunity,[15] which goes to the ability "of the convening authority to weigh evidence, judge the credibility of witnesses, determine controverted questions of fact . . . and determine what legal sentence should be approved." Para. 85c, Manual, *supra*. So long as that ability exists in the special court-martial convening authority, there is no reason to disqualify him solely because of his prior involvement in deciding a legal matter. The focus in immunity is upon the ultimate issue in the case, i. e., the factual question of guilt or innocence. Different considerations apply where the validity of a decision on a matter of law not involving the ultimate issue is involved. The distinction has been recognized as crucial by the Supreme Court. *Compare Williams v. United States*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), *with Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Tehan v. Shott*, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); and *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Thus, it is consistent to disqualify the convening authority in immunity situations but not where only the validity of a legal ruling is at issue.

■ Requiring a nonlawyer convening authority to pass upon the legal correctness of the rulings of a military judge is inconsistent with the stature which Congress gave to the military judge. Indeed, we have only recently repudiated the view that Congress gave the convening authority the power to overrule the military judge's determination to dismiss charges for reasons not amounting to an acquittal. *United States v. Ware*, 1 M.J. 282, 287 n. 32 (C.M.A. 1976).

■ The convening authority of a special court-material primarily exercises a command function when he acts upon the record; he may or may not have the benefit of legal advice at that time in view of the limitation of a written review to general courts-martial and special courts-martial involving a bad-conduct discharge; the decision on a question of the legality of a search does not affect "the very integrity of the fact-finding process"[16] nor does it pose any danger that an innocent person would be convicted;[17] the issue has been fully considered by the military judge at trial; and the Court of Military Review has the same fact-finding powers as the convening authority but has the expertise to decide legal issues not possessed by him, which provides an alternative safeguard to protect the accused's rights. *Johnson v. New Jersey, supra*, 384 U.S. at 728–29, 86 S.Ct. 1772. Therefore, we conclude that the special court-martial convening authority need not decide the issue of the legality of the search before he takes his action upon the record. This means that it was not necessary for him to disqualify himself from taking action because he authorized the search which was challenged at trial.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge FLETCHER concurs.

COOK, Judge (concurring in the result):

I believe the most important assertion in the principal opinion is that a "special court-martial convening authority need not decide the issue of the legality of . . . [a] search before he takes his action upon the record." In my opinion, that limitation on the responsibility of a special court-martial convening authority is contrary to the Uniform Code of Military Justice and our cases.

---

15. *United States v. Sierra-Albino*, 23 U.S.C.M.A. 63, 48 C.M.R. 534 (1974); *United States v. White*, 10 U.S.C.M.A. 63, 27 C.M.R. 137 (1958).

16. *Linkletter v. Walker*, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965).

17. *Tehan v. Shott*, 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

Article 60[1] directs that after trial the record of a court-martial "shall be forwarded to the convening authority" for action. Article 64[2] defines the nature of the action to be taken by the convening authority. It does not differentiate between a general court-martial authority and a special court-martial authority, or even a summary court-martial authority. In material part, Article 64 provides that "the convening authority may approve only such findings of guilty . . . as he finds correct *in law and fact*." (Emphasis supplied.) A statute "plain on its face" must "be applied, not interpreted." *United States v. Cunningham*, 21 U.S.C.M.A. 144, 145, 44 C.M.R. 198, 199 (1971).

In a case decided at its first term, this Court observed that the Uniform Code could not be effectuated unless "officers concerned with ordering, conducting and reviewing courts-martial observe scrupulously their duties and responsibilities under the Code and the Manual [for Courts-Martial]." *United States v. James*, 1 U.S.C. M.A. 379, 381, 3 C.M.R. 113, 115 (1952). How can a special court-martial convening authority affirm a finding of guilty as correct in law unless he is satisfied that the evidence establishing guilt was legally before the court-martial? Paragraph 87, Manual for Courts-Martial, United States, 1969 (Revised edition), expressly reminds every convening authority that he must consider the "legality of a finding of guilty"; under that admonition the Manual notes that the convening authority must consider not only the legal sufficiency of the evidence, but also whether the evidence is "competent," a legal matter determined by the rules prescribed by the President in the Manual for Courts-Martial, as authorized by Article 36.[3] To say, therefore, as my Brothers do, that a special court-martial convening authority "need not decide the issue of the legality of . . . [a] search" challenged at trial because such action "is inconsistent with the stature which Congress gave to the military judge" is just not true. Effectively, the assertion reads Article 64 out of the Uniform Code as regards a special court-martial convening authority. I cannot subscribe to such judicial emasculation of the command of Congress.[4]

In *United States v. McElwee*, 16 U.S.C. M.A. 586, 37 C.M.R. 206 (1967), the accused was tried by special court-martial. At trial, he raised a procedural question affecting the admissibility of his pretrial confession. The president of the court ruled against him. Thereafter, the special court-martial authority affirmed the conviction, and forwarded the record to the supervisory authority for further review, as provided by Article 65(b).[5] The supervisory authority decided that the issue " 'should be raised before and discussed by the Coast Guard's Board of Review' " as speedily as possible so that it could be " 'precedent.' " *Id.* at 587, 37 C.M.R. at 207. Consequently, without acting on the record, he forwarded it " 'for direct review' " by the Coast Guard Board of Review. A unanimous court held that the accused had been improperly deprived

---

1. Uniform Code of Military Justice, 10 U.S.C. § 860.

2. UCMJ, 10 U.S.C. § 864.

3. UCMJ, 10 U.S.C. § 836.

4. As my Brothers appear to attach importance to the fact that a convening authority is likely to be a "nonlawyer" and the trial judge will be a lawyer, their logic would apply equally to a general court-martial convening authority. In fact, our opinion in *United States v. Brewer*, 1 M.J. 233, 234 (C.M.A.1975), might even require that result in a case like the one now before us. There, the Court said that an "identity of function" exists as regards a convening authority who has no general court-martial power and a general court-martial authority who acts as the "supervisory" authority. *See* Article 65(b), UCMJ, 10 U.S.C. § 865(b). Further, a special court-martial may be constituted without a military judge. *See* Articles 16(2)(A) and 19, UCMJ, 10 U.S.C. §§ 816(2)(A) and 819. In such case, would the convening authority be required to review the legal issues presented by the record? . Predication of scope of responsibility upon the happenstance of the presence or absence of a military judge on the court-martial is plainly contrary to the unqualified language of Article 64, UCMJ.

5. UCMJ, 10 U.S.C. § 865(b).

of his statutory right to review by a supervisory authority. In my opinion, my Brothers' determination that direct review of the case of the accused now before us by a Court of Military Review is an allowable "alternative" to his right, under Articles 60 and 64, to review by the convening authority is contrary to *McElwee*.[6] I believe *McElwee* is more faithful to the Uniform Code than are my Brothers.

If a ruling at trial admitting evidence adverse to the accused is legally incorrect, I believe the accused is entitled to have that ruling set aside and its impact on the verdict of guilty assessed as soon as possible. Congress said that should be accomplished at the trial level. I do not believe this Court can direct postponement of decision until the matter reaches the Court of Military Review, if the case is one reviewable by it, or it reaches the Judge Advocate General of the accused's armed force, if the case is one reviewable by him under Article 69[7], or the case comes before a judge advocate for review, as provided by Article 65(c).[8] I, therefore, disagree completely with the justification presented by my Brothers for affirming the convening authority's action. My reasons for affirming follow.

As the principal opinion points out, "the convening authority's appearance as a witness did not disqualify him" from reviewing the accused's record. Consequently, disqualification must rest upon the fact that, at trial, the accused attacked the legal correctness of the convening authority's issuance of the authorization to search which produced evidence used against him.

My Brothers acknowledge civilian cases indicating that issuance of a search warrant by a judge does not disqualify him from presiding later at the trial on the ground that he is "required to pass on the validity of his own" previous act. These cases are a particularization of the general rule in the civilian courts that a judge's prior disposition of a preliminary matter in a case does not disqualify him from later acting in the case "on the merits." 48 C.J.S. *Judges* § 83 d. My Brothers, however, represent that the Court's endorsement in *United States v. Wolzok,* 1 M.J. 125, 128 (C.M.A.1975), of the opinion of the United States Army Court of Military Review in *United States v. Cardwell,* 46 C.M.R. 1301 (1973), established for the military "that a military judge who granted authority to search is disqualified from presiding where a search warrant issued by him is admitted in evidence during a search contest, since at that point he becomes a witness for the prosecution." I do not read the *Cardwell* opinion to support that interpretation of it.

The Court of Military Review did indeed say that introduction into evidence of a search warrant, with a writing reciting the facts presented to the judge, constituted the judge a witness at the trial and he should have disqualified himself. *Id.* at 1305. However, as I read the opinion at the time of *Wolzok* and reread now, that statement impressed me as an incidental dictum. The admission into evidence of the judge's search warrant was not alone disqualifying. What was disqualifying was the fact he testified as a witness and his testimony went far beyond recital of the information presented to him on the application for the warrant. That additional testimony "improved the record of trial on the question of existence of probable cause to issue a warrant." *Id.* at 1304. That the latter circum-

---

**6.** In my separate opinion in *United States v. Payne*, 3 M.J. 354, 358, 360 (C.M.A.1977), I indicated that an Article 32 investigating officer need not inquire into the admissibility of evidence obtained in a search. However, the stress my Brothers placed upon a discussion of "the legality of the search" by the investigating officer and trial counsel as a factor bearing on the qualification of the investigating officer to serve suggested they believed an investigating officer should consider the admissibility of evi-

dence at trial. *Id.* at 355 n. 4. If that sort of inquiry is proper at the investigative stage of a court-martial proceeding, I am unable to see how my Brothers can now declare that it is an inappropriate inquiry for a convening authority reviewing a record of conviction, as required by Articles 60 and 64, UCMJ.

**7.** UCMJ, 10 U.S.C. § 869.

**8.** UCMJ, 10 U.S.C. § 865(c).

stance was a necessary element of the court's determination of disqualification appears from the following statement in the opinion:

> The judicial process is a delicate device which places the military judge at the fulcrum of the scales of justice. To allow him to review the correctness of his prior conduct and to supply additional information at trial in support of his issuance of the warrant by testifying, either in person or by affidavit, places too heavy a burden upon him. [*Id.* at 1305.]

In my opinion, the rule applicable in the federal civilian courts, exemplified by *United States v. Garramone,* 374 F.Supp. 256 (D.Pa.1974), aff'd., 506 F.2d 1053 (3d Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975), which is cited in the principal opinion, is not inconsistent with the Uniform Code of Military Justice, the Manual for Courts-Martial, and our previous decisions, and is, therefore, appropriate for the military courts. Under that rule, a military judge who issues a search warrant is not thereby disqualified from acting as a judge in later proceedings in the case, including the trial.

My Brothers have elected not to clarify our *Wolzok* opinion, but to declare it inapplicable to a convening authority. They further assert that in acting on a record of trial, a special court-martial convening authority "primarily exercises a command function," implying that he does not act as a judge reviewing a case for legal error. To me, the primary function of the convening authority in reviewing a conviction, as required by Article 64, UCMJ, is judicial in nature. *See also* Article 62(b), UCMJ, 10 U.S.C. § 862(b); para. 86b, Manual, *supra.*

Only a few months ago, this Court held that in issuing a search warrant, a military commander acts as a "neutral and detached magistrate," as is constitutionally required. *United States v. Ezell,* 6 M.J. 307 (C.M.A. 1979). The Court has also held that other actions taken by a convening authority in a court-martial proceeding are "judicial" in nature. As early as *United States v. Sonnenschein,* 1 U.S.C.M.A. 64, 71, 1 C.M.R. 64, 71 (1951), the Court observed that the convening authority's functions in reviewing a court-martial record are "hybrid," with major responsibilities "[s]ounding . . . in appellate review." In *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 137, 48 C.M.R. 751, 753 (1974), the Court remarked that certain of the convening authority's review powers "are . . . associated with appellate review," while others "have the attributes of [those of] a trial court.[9]

Congress has decreed for the civilian courts that "[n]o judge shall hear or determine an appeal from the decision of a case or issue tried by him." 28 U.S.C. § 47; *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 431 F.2d 135, 136 (4th Cir. 1970) (Craven, Cir. J.). This Court recognized the applicability of the concept to a convening authority and held that a commander who "acted [on the record] as a special court-martial convening authority was thereafter ineligible to act as supervisory authority upon the same case." *United States v. McGary,* 9 U.S.C.M.A. 244, 248, 26 C.M.R. 24, 28 (1958).

I have no doubt that a special court-martial convening authority must consider the admissibility of evidence challenged by the accused at trial, and that function is judicial in nature. That review is not of his own pretrial ruling, but the ruling of the trial judge. From that standpoint, he is not directly passing upon the validity of his own act. *Cf. United States v. McGary, supra.* Assuredly, his previous determination of probable cause for issuance of an authorization to search is directly involved, but that previous preliminary activity is not, as noted earlier, a disqualification to final decision on the merits. *United States v. Garramone, supra.*

**9.** My Brothers have repudiated the rule for speedy disposition of charges propounded in *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974). They have not denied the judicial nature of all the convening authority's responsibilities in acting on a record of trial. *See United States v. Banks,* 7 M.J. 92 (C.M.A.1979).

In *United States v. Conn,* 6 M.J. 351 (C.M.A.1979), this Court held that a convening authority is not disqualified to refer a case to trial because he had previously ordered the accused's arrest. In *United States v. Bunting,* 4 U.S.C.M.A. 84, 87, 15 C.M.R. 84, 87 (1954), and in *United States v. Greenwalt,* 6 U.S.C.M.A. 569, 573, 20 C.M.R. 285, 289 (1955), the Court held that reference of a charge to trial "requires the exercise of a judicial judgment." If a pretrial determination of probable cause for arrest, which may involve the admissibility of evidence discovered incident to the arrest, does not disqualify in this judicial function, it is equally not disqualifying in regard to the judicial function of review of the record of trial. In rejecting as "almost frivolous" a defense claim that the trial judge should have disqualified himself because he had ruled against the defense in an earlier appearance before him, the Fifth Circuit Court of Appeals made an observation that can appropriately be noted here, with interlineation to apply it to military practice: "Our judicial system does not provide for no-deposit/no-return . . . [convening authorities], disposable after one use." *United States v. Harris,* 458 F.2d 670, 678 (5 Cir. 1972), *cert. denied sub nom. Scott v. United States,* 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972).

For the reasons stated, I join in affirming the decision of the Court of Military Review.