UNITED STATES, Appellee,

v.

Colonel Romano J. PARINI, SSN
554–36–5931, United States
Army, Appellant.

CM 440197.

U. S. Army Court of Military Review.

30 Nov. 1981.

Howard J. DeNike, Esquire, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, and Major Charles A. Byler, JAGC.

Captain Robert D. Higginbotham, JAGC, argued the cause for the appellee. With him on the brief were Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, and Major John T. Meixell, JAGC.

Before MITCHELL, MILLER and LEWIS, Appellate Military Judges.

OPINION OF THE COURT

MITCHELL, Senior Judge:

Appellant was charged with attempted sodomy, attempted rape, forcible sodomy, four specifications of indecent assault, obstruction of justice, twelve specifications of conduct unbecoming an officer, three specifications of assault with intent to commit sexual offenses and unlawfully endeavoring to impede a military criminal investigation in violation of Articles 80, 125, 133 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 925, 933 and 934 (1976). At the time of these alleged offenses he was the commander of the Sixth Region Criminal Investigation Division at Presidio of San Francisco, California.

He pleaded guilty to three of the specifications alleging indecent assault, and five of the specifications alleging conduct unbecoming an officer. He was sentenced by members to one year in confinement at hard labor, a fine of $15,000.00 and further confinement, not to exceed 150 days, until the fine is paid. Pursuant to a pretrial agreement, not guilty findings were entered on the rest of the specifications when the Government presented no evidence on them. The fine was approved by the convening authority who also, pursuant to the pretrial agreement, suspended the confinement.

Appellant contends on appeal that the findings and sentence should be set aside because: (1) the convening authority and his staff judge advocate were disqualified from reviewing and acting upon the findings and sentence; (2) the charges and specifications are gender-based offenses which fail to meet the constitutional requirements of equal protection; (3) the specifications alleging a violation of Article 133, UCMJ, conduct unbecoming an officer, are vague and fail to state an offense; (4) the imposition of a fine is inappropriate and is a deprivation of property without due process of law. For the reasons set forth below, we find the appellant's contentions without merit and affirm.

I

Appellant asserts the convening authority was disqualified from reviewing and acting upon the findings and sentence because he had previously accepted a plea bargain. He claims this puts the convening authority in the position of passing upon the validity of his own acts when he conducts his review and further places him in a partisan position. We do not agree.

The only statutory disqualification of a convening authority concerns his becoming an accuser, which includes having "an interest other than an official interest in the prosecution of the accused." Articles 22(b), 23(b) and 1(9), UCMJ, 10 U.S.C. §§ 822(b), 823(b) and 801(9). We do not believe that the approval of the plea bargain gives the convening authority any interest, other than official, in the prosecution of the accused.

The convening authority is not disqualified from acting merely because the action may involve passing upon the validity of a prior act. *United States v. Cansdale*, 7 M.J. 143 (C.M.A.1979). Whether he can do so depends upon the nature of his earlier action. *Cansdale, id.* 7 M.J. at 146. The convening authority here is not passing on his earlier action, the approval of the plea bargain, when he conducts his review. Once the case goes to trial and the accused does not breach the agreement the convening authority is bound, after sentencing, by the provisions of the plea bargain. *Cf. United States v. Stovall*, 16 U.S.C.M.A. 291, 36 C.M.R. 447 (1966).

Appellant also contends that approval of a plea bargain has a chilling effect on the convening authority's exercise of his discretion under Article 64, UCMJ, 10 U.S.C. § 864, to disapprove the findings or sentence or both. He argues that having accepted the plea bargain the convening authority is less likely to act in appellant's favor under Article 64. This argument overlooks what appellant has gained by entering into the plea bargain. By doing so he acquires, in effect, a safety net which guarantees to break his fall should the

court-martial result in a more severe sentence. And, with this net in place, he parlays his bargain on a trial and the possibility of a lighter sentence. While the acceptance of the plea bargain does not negate the necessity of the convening authority to exercise his discretion under Article 64, an accused cannot accept the benefits of his bargain and at the same time complain of its possible effect. We hold that the acceptance of the plea bargain does not disqualify the convening authority from acting on the review of the findings and sentence.

■ Appellant also contends the staff judge advocate should have been disqualified from preparing the post-trial review because after the trial he "publicly defended" the apparent leniency of the plea bargain when it was attacked by the news media. We do not agree. The staff judge advocate when questioned about the agreement by the post newspaper explained the procedure entailed in entering into a plea bargain and, in general, the operation of the agreement relative to the court-martial itself and the convening authority. This did not act to disqualify him.

## II

We now turn to the charges to which appellant entered a guilty plea. The indecent assault was charged under Article 134, UCMJ, the general article. Paragraph 213*f* (2), Manual for Courts-Martial, United States, 1969 (Revised edition), (MCM 1969 (Rev)), defines the crime as follows:

> An indecent assault is the taking by a *man* of indecent, lewd, or lascivious liberties with the person of a female not *his* wife without her consent and against her will, with the intent to gratify *his* lust or sexual desires. In a proper case indecent assault may be an included offense of assault with intent to commit rape. (Emphasis added.)

The Manual states that proof of an indecent assault includes, *inter alia*, "(a) That the accused assaulted a certain female not *his* wife...." (Emphasis added.) Paragraph 213*f*(2)(a), MCM 1969 (Rev).

Some of the specifications of conduct unbecoming an officer to which appellant pleaded guilty are alleged in terms of an indecent assault. Appellant contends that the offense of indecent assault, as defined by the Manual, is unconstitutionally gender-based. This contention is without merit.

■ We first dispose of the Government's argument that a female can be guilty of the offense as well. The Government bases this argument on 1 U.S.C. § 1 (1976) which states that in determining any act of Congress "... unless the context indicates otherwise ... words imparting the masculine gender include the female as well...." When we apply this rule to the Manual provision, it is clear that the context indicates otherwise and that a female cannot be guilty of this offense except possibly on an aider and abettor theory. Certainly, she cannot be the actual perpetrator.

The issue then is whether the offense of indecent assault violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution because the offense can only be committed by males and not females. The law relative to such gender-based classifications has been brought into sharp focus in the case of *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981) a statutory rape case. There the court stated that the Equal Protection clause does not demand that a statute necessarily apply equally to all persons or require things which are different in fact to be treated in law as though they were the same. The court further observed that it has consistently upheld statutes when the gender classification is not invidious but on the contrary realistically reflects the fact that the sexes are not similarly situated; and, in certain circumstances, the legislature can provide for the special problems of women. Like the Maryland courts we feel "[t]he equality of the sexes expresses a societal goal, not a physical metamorphosis. It would be anomalous indeed if our aspirations toward the ideal of equality under the law caused us to overlook our disparate human vulnerabilities." *Brooks v. State*, 24

Md.App. 334, 330 A.2d 670 (1975). What it all comes down to is this. Stark common sense is infinitely more correct and wise than visionary nonsense. History of mankind tells us so.

What the legislature cannot do is make overbroad generalizations based on sex which are entirely unrelated to any differences between men and women or which demean the ability or social status of the affected class. *Michael M. v. Superior Court of Sonoma County, supra,* 101 S.Ct. at 1204 (per Justice Rehnquist, with three justices concurring). The court in *Michael M., supra,* reiterated the test to be applied to gender-based legislation. The classification must bear a substantial relationship to important governmental objectives.

Applying these principles to this case, the purpose of the provision is to protect women from unwanted sexual liberties by males. It serves to protect the female from not only the physical, but from emotional and psychological dangers inherent in the proscribed conduct. We do not think it can be denied that the problem of indecent assaults by males upon females has been longstanding and far more numerous than sexual assaults by females upon males. As *Michael M.* reveals, the question boils down to whether the sovereign can attack the problem of sexual assaults by males upon females by making the male criminally liable for such conduct. It is ludicrous to say that it cannot. The provision passes constitutional muster. *See Finley v. State,* 527 S.W.2d 553 (Tex.Cr.App.1975); *State v. Fletcher,* 341 So.2d 340 (La.1976). Also, the Wisconsin and Arizona courts are in accord, *State v. Ewald,* 63 Wis.2d 165, 216 N.W.2d 213 (1974); *State v. Kelly,* 111 Ariz. 181, 526 P.2d 720 (1974); though we hardly need precedent to resolve so strained an argument.

### III

Appellant contends that two of the specifications under the charge of conduct unbecoming an officer fail to state an offense. The first specification alleges that in connection with an Employee Efficiency Report the accused:

did ... while on duty and in a military uniform, wrongfully and dishonorably seek to extract sexual favors from [an office employee] by unzipping his pants and saying to her 'I am the one who took care of it, you know. You should be very grateful to me.'. . . .

The other specification alleges that in connection with an Officer Evaluation Report the accused:

did ... while on duty and in a military uniform, wrongfully and dishonorably seek to extract sexual favors from Captain [K] by saying to her 'I am going to max you on your OER. You owe me one. When are we going to have an affair? It would be a happening.'. . . .

Appellant contends that the Government was trying to allege bribery and graft and failed to allege all the necessary elements. He, therefore, contends the specifications should be dismissed. We do not agree.

To begin, the American who is commissioned to be an officer takes an oath to uphold the Constitution, to bear true faith and allegiance and to discharge well and faithfully the duties of office. The nature of this commission places upon the military officer's integrity and character not only the well-being of the country but also a sense of public faith and trust in the officer corps. The officer's commitment to his oath is absolute and permits no moral or mental reservation.

It follows that a higher standard of conduct is required in law of an officer than is required of others. *Cf. United States v. Pitasi,* 20 U.S.C.M.A. 601, 44 C.M.R. 31 (1971). Presumably that extra degree of judgment demanded of an officer is inherent in the process of his special selection from the population as a whole and further inculcated in his years of training and advancement.

Article 133, UCMJ, proscribes conduct unbecoming an officer and paragraph 212, MCM 1969 (Rev) defines it. It includes behavior in an official capacity

which dishonors or disgraces the individual as an officer or seriously compromises his character as a gentleman. Although conduct which is otherwise punishable under any other article of the UCMJ may amount to conduct unbecoming an officer, it is not necessary that the conduct be a crime in order to be punishable under Article 133. There can be no doubt to the reasonably prudent officer, or to the appellant, that the particular acts which took place here are so debilitating of the dignity required by an officer's obligations as to disgrace him as an officer and gentleman. Accordingly, appellant could reasonably understand that his conduct was unbecoming. *See Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

## IV

■ Appellant argues that the members erred in assessing a fine and the convening authority erred in approving it because the crimes involved here do not involve unjust enrichment. *See* paragraph 126*h*(3), MCM 1969 (Rev). Courts of Review have repeatedly recognized the directory, as opposed to mandatory, nature of the language in the cited paragraph, to the effect that fines are normally reserved for cases involving unjust enrichment. *United States v. Finlay*, 6 M.J. 727, 728 n.1 (A.C.M.R.1978); *United States v. Higdon*, 2 M.J. 445, 456 (A.C.M.R.1975); *United States v. Whitekiller*, 8 M.J. 772, 773 (N.C.M.R.1979). There is no legal requirement that such enrichment accrue before a fine can be legitimately imposed.

■ Appellant seeks to require the military judge to fashion an instruction outlining the circumstances under which a fine is appropriate, and further to require the Government to prove that a fine is appropriate. Neither is a requirement of law. The military judge instructed the members that dismissal would terminate appellant's entitlement to active duty or retired pay. He further instructed them that forfeitures could not be applied to retired pay. We think it a fair inference that the members adjudged a fine because they considered the financial impact of dismissal as too severe. Realizing that forfeitures could not be applied to retired pay, it appears they chose a fine as the only available means of adjudging a financial penalty. This emerges as the sole choice to which appellant's defense counsel wanted to limit the members. It was he, who for the obvious tactical reasons, requested the military judge to instruct the members that they could impose a fine. Having reaped the perpetual benefits of the requested instruction, appellant now asks us to declare the fine inappropriate. We are not so disposed. We determine a fine to be an appropriate punishment for the crimes committed during duty hours, against subordinates, and discrediting the office from which his active duty military pay and retired pay derive. In considering this issue we have waived the longstanding rule that a party may not ask for appellate review of an error in giving an instruction which he himself requested. *Matheson v. United States*, 227 U.S. 540, 33 S.Ct. 355, 57 L.Ed. 631 (1912); *United States v. Wiggins*, 530 F.2d 1018 (D.C.Cir. 1976).

## V

Appellant asserts the unlimited power of a general court-martial to impose a fine violates the Fifth Amendment prohibition against deprivation of property without due process of law and constitutes cruel and unusual punishment in violation of Article 55, UCMJ, 10 U.S.C. § 855. We do not agree.

Pursuant to Article 56, UCMJ, 10 U.S.C. § 856, the President of the United States has placed limits on the amount of fine which may be adjudged by a special and summary court-martial, but he has set no maximum limit on the amount of fine which a general court-martial may impose. *See* paragraph 126*h*(3), MCM 1969 (Rev). A sentencing statute is not unconstitutional because it does not provide a maximum sentence. *Earin v. Beto*, 453 F.2d 376 (5th Cir. 1972), *cert. denied* 406 U.S. 909, 92 S.Ct. 1618, 31 L.Ed.2d 819 (1972) and the failure of a statute to fix a maximum fine does not

render it unconstitutional. *Singletary v. Wilson*, 3 S.E.2d 802, 191 S.C. 153 (1939). When the legislative body has not imposed a maximum penalty, the power to impose a fine is limited by a constitutional provision that excessive fines shall not be imposed. The question here is whether the fine of $15,000.00 is excessive and violative of the Eighth Amendment to the United States Constitution.

In determining whether a fine authorized by statute is excessive in the constitutional sense, due regard must be given to the object designed to be accomplished. *State v. Trailer Service, Inc.*, 61 Wis.2d 400, 212 N.W.2d 683 (1973), (fine imposed on commercial trucker who exceeded vehicular weight limitations is proper to the importance and magnitude of the public interest sought to be protected, and to the circumstances and the nature of the act for which it is imposed); *State v. Staub*, 182 La. 1040, 162 So. 766 (1935) (fine imposed for violation of state statute prohibiting lotteries and related activities is proper).

In order to justify the court in interfering and setting aside a fine authorized by statute, the fine must be so excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances. *State v. Smith*, 58 N.J. 202, 276 A.2d 369 (1971) (suspension of driver's license of individual convicted of marihuana use unrelated to driving did not constitute cruel or unusual punishment); *State v. Naczas*, 8 Wis.2d 187, 98 N.W.2d 444 (1959) (fine proportioned to weight of an overload on state highway rather than financial status of loader is not unconstitutional).

Here, the maximum sentence which appellant could have received was 21 years in confinement, total forfeiture of all pay and allowances and dismissal. The conduct in which he engaged occurred on duty and was linked by him to his official acts. The conduct was reprehensible, and outrageous, and merits the amount of the fine imposed.

The findings of guilty and sentence are affirmed.

Judge MILLER and Judge LEWIS concur.