STATE OF CONNECTICUT *v.* RICHARD D. TOCE

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 15-12508

Argued January 22, 1968—decided October 17, 1969

*John P. McKeon,* of Hartford, for the appellant (defendant).

*Francis M. McDonald,* deputy chief prosecuting attorney, for the appellee (state).

JACOBS, J. Following a trial by jury, the defendant was convicted of the crime of policy playing in violation of § 53-298 of the General Statutes, and of the crime of pool selling in violation of § 53-296. Thereafter he pleaded not guilty to the second part of the information, charging him with being a second or subsequent offender, under § 53-298, of the crime of policy playing.[1] He was found guilty under

---

[1] Under § 53-298 of the General Statutes, a person charged as a second or subsequent offender "shall be fined not less than five hundred dollars nor more than three thousand dollars or imprisoned not more than three years, or both."

both parts of the information and has appealed from the judgment.[2]

We shall first dispose of a procedural problem that besets this case. The defendant moved to disqualify the warrant issuing judge *(Ciano, J.)* from hearing the motion to suppress the evidence. The motion was denied. Error is assigned in the denial of the motion.[3]

In *State* v. *Hayes,* 127 Conn. 543, the defendants filed a motion to disqualify the presiding judge from sitting "in the trial of this cause" because, inter alia, "1. He caused the Special Grand Jury to be summoned . . . and appointed the Special State's Attorney to examine and cross-examine witnesses under oath sworn to secrecy . . . . 2. The said Judge overruled the defendants' motions as on file, . . . [attacking] the legality of the Special Grand Jury . . . . 3. The said Judge overruled all questions of law heretofore raised by plea in abatement, motion to quash and demurrer . . . ." A-157 Rec. & Briefs 275-277. Our Supreme Court held (p. 581): "Neither because the trial judge ordered the grand jury and presided throughout the grand jury proceedings and had passed on numerous preliminary motions, nor for any other reason, was he disqualified to preside at the trial . . . ." In *People*

---

[2] This case was argued January 22, 1968, and was assigned to *Macdonald, J.* Owing to illness he did not complete his opinion. On September 8, 1969, the file and exhibits were turned over to *Jacobs, J.,* to write the opinion.

[3] We are aware of the statutory disqualification which was enacted by the legislature in 1967 (§ 54-33f [5]), after the rendition of judgment in this case, absolutely prohibiting the judge who signed the search warrant from presiding at the hearing on the motion to suppress the evidence. We see no occasion to apply the doctrine of retroactivity to a procedural problem of this kind; nothing in the defendant's brief supports a claim for the application of the doctrine. He merely asserts, without benefit of citation, that the "claimed error violates right, reason and sound jurisprudence."

v. *Politano,* 235 N.Y.S.2d 712, 716, the defendant moved before the judge who had issued the search warrant to vacate it on the ground that there was insufficient factual showing made in the application for the search warrant to justify its issuance. The judge did not reach the merits of the application, on the ground that he had no authority to vacate the search warrant, and concluded that " 'it would thus appear that the defendant can raise the same questions on the trial of the action as raised in his application.' " On appeal, it was ruled (p. 717) that "if the warrant is not well-founded it ought to be vacated on application to the judge who issued it without awaiting a trial on the charge." And in *People* v. *McCall,* 17 N.Y.2d 152, the court was faced with a significant procedural problem in the New York practice as to where and when a person whose private telephone conversations have been intercepted under judicial sanction can show that the factual basis for an eavesdropping order has been insufficient. The Court of Appeals held (p. 155) that "[t]he preferable way is to apply to vacate the order to the Judge who made it."

In the present case, the defendant has made no showing of any personal bias or prejudice on the part of Judge Ciano in support of the claim of disqualification. See 48 C.J.S. 1069, Judges, § 83(d); 46 Am. Jur. 2d, Judges, § 181; note, 21 A.L.R.3d 1369, 1374. Moreover, in the denial of the motion of disqualification we can perceive no serious detriment to the administration of justice, "for of what concern is it to a judge to preside in a particular case; of what concern to other parties to have him so preside?" *Berger* v. *United States,* 255 U.S. 22, 35. We cannot conceive that the judge in this case would "permit his previous decision in the case to control him." *In re J. P. Linahan, Inc.,* 138 F.2d 650, 654.

The only other question raised on this appeal is whether the judge, when he issued the search warrant, had before him " 'facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information . . . sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar* v. *United States,* 338 U.S. 160, 175; see *Berger* v. *New York,* 388 U.S. 41, 55; *State* v. *Wilson,* 153 Conn. 39, 42.

The affidavit under attack, on which the warrant was issued, was made and submitted to a judge of the Circuit Court *(Ciano, J.)* on November 4, 1966, by the affiant-officers, Detective Thomas J. McDonnell and Sergeant Joseph Jasonis, regular members of the state police department assigned to the criminal intelligence unit. In essence, the affidavit contained the following allegations: (1) On October 28, 1966, Detective McDonnell received information from a confidential and reliable informant who "had observed persons dialing telephone number 666-2863 . . . and overheard them give policy bets. The informant observed and overheard these . . . [conversations] in a public place on two different occasions during the week of October 24, 1966." (2) On October 28, 1966, Detective McDonnell received information from a second confidential and reliable informant who had given the state police information in the past which led to the arrest and conviction of Richard Toce for the crime of policy playing.[4] On the present occasion, October 28, 1966, the informant stated that he had been told by per-

<hr/>

[4] In *Aguilar* v. *Texas,* 378 U.S. 108, the United States Supreme Court approved the affidavit in *Jones* v. *United States,* 362 U.S. 257. This would indicate that in a case where the affidavit is based entirely on hearsay information the underlying facts sufficient to establish the general credibility of the informant may be satisfied by a statement that the informant had furnished correct information on one previous occasion.

sons who were known to him to be policy bettors that Richard Toce was accepting bets at his home in Newington and that Richard Toce had a telephone under a fictitious name. (3) State police investigation of telephone company records disclosed that telephone number 666-2863 was listed under the name of "A. Butler," at apartment E-7, 1546 Willard Avenue, Newington, Connecticut, although the records of the light and power company revealed that Richard Toce lives in the apartment in question. (4) Toce was placed under surveillance by a state trooper, Joseph Perry, who observed Toce's movements over a period of four days commencing on October 31 and ending on November 3, 1966. The surveillance supplied specific facts of significance and of adequate reliability. (5) The application recited that "the affiants based upon their experience, training and knowledge . . . believe that Richard Toce is now engaged in . . . accepting bets via telephone at 1546 Willard Avenue, Newington, Connecticut," on the basis of the allegations recited in the affidavit, and "also . . . [because] Richard Toce is at home during the hours that policy bets are normally accepted . . . and that Richard Toce leaves his home shortly after the time that policy bets are no longer accepted by telephone."

"Today's decision deals, not with the necessity of obtaining a warrant prior to search, but with the difficult problem of the nature of the showing that must be made before the magistrate to justify his issuance of a search warrant." *Spinelli* v. *United States,* 393 U.S. 410, 436 (dissenting opinion). "An evaluation of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers . . . who may happen to make arrests.' " *Aguilar* v. *Texas,* 378

U.S. 108, 110.[5] "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States* v. *Ventresca,* 380 U.S. 102, 109. Thus, a warrant may properly be issued on evidence of a less "judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant." *Jones* v. *United States,* 362 U.S. 257, 270. Affidavits for search warrants "must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion." *United States* v. *Ventresca,* supra, 108.

The preference to be accorded to warrants is a recognition that the act of applying for a warrant is an important step toward effectuating the constitutional protection against unreasonable searches and seizures. Given the inherent limitations of the judicial remedies for unconstitutional searches, the general security of persons in their homes is far

---

[5] *Aguilar* held invalid a search warrant issued by a magistrate upon the strength of an affidavit which recited only that the affiants had received "reliable information" from a "credible person" concerning narcotics activities of the defendant. The affidavit was devoid of any other particulars. The court made no mention of any necessity for corroboration independent of the information itself; presumably, if the "underlying circumstances" of both the informant's belief and the officer's belief in his reliability had been sufficiently set out, probable cause would have been established. *Aguilar* is essentially a synthesis of two prior Supreme Court cases: *Draper* v. *United States,* 358 U.S. 307, and *Jones* v. *United States,* 362 U.S. 257. *Draper* held that information from a reliable informant supplemented only by corroborative facts totally innocent in themselves could support an arrest without a warrant and a search incident to that arrest. *Jones* considered the factual basis for the informant's allegations, a problem left open in *Draper.* The *Aguilar* synthesis combined the requirement that the informant be reliable with the requirement that he have an adequate basis for his allegations, emphasizing the need for "underlying circumstances" in support of each of the two-pronged test.

better served by rules which encourage resort to "antecedent justification." *United States* v. *Lefkowitz,* 285 U.S. 452, 464. As the Supreme Court said in *Ventresca,* supra, 108, a "grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

In the case at bar, the "affidavit is unusually long and detailed. In fact, it recites so many minute and detailed facts developed in the course of the investigation of . . . [Toce] that its substance is somewhat obscured." *Spinelli* v. *United States,* supra, 437 (dissenting opinion). "[T]he detailed nature of the information given, suggests that the informer was disclosing firsthand knowledge, rather than a 'suspicion,' 'belief' or 'mere conclusion' . . . or 'a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation' . . . ." *United States* v. *Acarino,* 408 F.2d 512, 514. It is true that the affidavit here is based almost exclusively on hearsay information. In these circumstances, the challenge to the sufficiency of the affidavit presents two related questions: (1) whether there was a substantial basis for crediting the hearsay as a fact upon which a finding of probable cause could be made; and, (2) if so, whether the facts were sufficient to support the judge's determination of probable cause. See *Jaben* v. *United States,* 381 U.S. 214; *Giordenello* v. *United States,* 357 U.S. 480. In *Rugendorf* v. *United States,* 376 U.S. 528, the United States Supreme Court upheld a warrant based on an affidavit in which much of the incriminating information had been supplied by the informants to another F.B.I. agent, who in turn related it to the affiant. Here, as in *Rugendorf,* the judge had substantial basis for crediting the source of the information, since "[o]bservations of fellow officers of the Government

engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States* v. *Ventresca, supra,* 111. Furthermore, in our view, the information furnished by the informants was sufficiently trustworthy to provide a basis for the judge's finding of probable cause. In *Jones* v. *United States, supra,* 269, the Supreme Court held that a valid warrant may be issued on the basis of an affidavit which rested entirely on hearsay information "so long as a substantial basis for crediting the hearsay is presented." Where, therefore, as here, the affidavit recites the underlying circumstances supporting the affiants' or informants' belief, and "where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *United States* v. *Ventresca, supra,* 109.

We hold that neither *Aguilar* nor *Spinelli* require us to reverse this conviction.

There is no error.

In this opinion KINMONTH and MACDONALD, Js., concurred.