2004 SD 52

**Milo Walter HIRNING, Petitioner and Appellant,**

v.

**Robert DOOLEY, Warden of the Spring-field Correctional Facility Springfield, South Dakota, Respondent and Appellee.**

**No. 22839.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 2004.

Decided April 21, 2004.

David M. Hosmer, Yankton, South Dakota, for petitioner and appellant.

Lawrence E. Long, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, South Dakota, for respondent and appellee.

ZINTER, Justice.

[¶ 1.] Milo Hirning filed a Petition for Writ of Habeas Corpus challenging four drug convictions. The habeas court denied relief. Hirning appeals on three of the convictions. We affirm.

### Facts and Procedural History

[¶ 2.] There are three criminal proceedings involving four convictions that were reviewed by the habeas court. Hirning challenges the first, third, and fourth convictions in this appeal.

[¶ 3.] The first conviction arose out of an automobile stop on a Brown County highway. The facts related to this conviction are found in *State v. Hirning*, 1999 SD 53, 592 N.W.2d 600 (*Hirning I*). Hirning's trial counsel was William Gerdes. Gerdes filed a motion to suppress the

drugs found in Hirning's pants pocket after the stop. The motion was denied by the trial court. Hirning stipulated to the facts and was found guilty of unauthorized possession of a controlled substance (and of being a habitual offender). Hirning appealed the search, conviction, and ten-year sentence. We affirmed in *Hirning I*.

[¶ 4.] The second conviction arose from a 17–year–old informant's allegation that Hirning sold marijuana. Hirning was charged with distribution of marijuana to a minor and with being a habitual offender. He was initially represented by Gerdes, but retained attorney Ramon Roubideaux to finish the case. Hirning pleaded guilty to distribution and was sentenced to five years in the South Dakota State Penitentiary. This sentence ran concurrently with the previous ten-year sentence. This conviction is not challenged in this habeas appeal.

[¶ 5.] The third and fourth convictions both arose from a subsequent search of Hirning's home. Roubideaux was again Hirning's trial counsel. Hirning's co-defendant was Shane Nolter, who was also represented by Roubideaux. Hirning filed an affidavit waiving any conflict of interest existing at the time of the affidavit.

[¶ 6.] In these third and fourth cases, Roubideaux filed a motion to suppress. Hirning contended that the warrant failed to state with specificity the items to be seized. At the hearing on that motion, Roubideaux orally amended the motion to add a claim that the warrant failed to establish probable cause. The motion was denied by Circuit Judge Jack Von Wald.

[¶ 7.] Hirning later retained David Palmer as new counsel. Palmer filed motions to reconsider Roubideaux's previous challenges to the search warrant. Palmer also requested that Judge Von Wald recuse himself because he had signed the search warrant. Judge Von Wald denied the recusal request, denied reconsideration of the Roubideaux motion to suppress, and denied the subsequent motions. Based on stipulated facts, Hirning was convicted of both counts of unauthorized possession of a controlled substance. He was sentenced to ten years on each count. These sentences ran concurrently with each other, but consecutive to his sentences for the first and second convictions.

[¶ 8.] Hirning then filed this petition for writ of habeas corpus challenging the validity of his convictions. Following an evidentiary hearing, Circuit Judge Jon Flemmer denied Hirning's request for habeas relief.

[¶ 9.] On appeal, Hirning raises the following issues:

### Conviction 1

1. **Whether trial counsel was ineffective for failing to properly investigate witnesses who could have testified at the suppression hearing.**

### Convictions 3 and 4

2. **Whether the judge who signed the search warrant had an appearance of bias when he presided at the suppression hearing reviewing the same warrant.**

3. **Whether the affidavit in support of the search warrant failed to establish probable cause.**

4. **Whether trial counsel was ineffective for failing to adequately raise Fourth Amendment and Due Process claims, and for having a conflict of interest.**

### Analysis and Decision

[¶ 10.] Habeas Corpus review is limited because it is a collateral attack on a final judgment. *Siers v. Class*, 1998 SD 77, ¶ 9, 581 N.W.2d 491, 494 (citing *Black*

*v. Class,* 1997 SD 22, 560 N.W.2d 544). "Habeas corpus is not a substitute for direct review." *Id.* (citing *Loop v. Class,* 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191). "[H]abeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights." *St. Cloud v. Leapley,* 521 N.W.2d 118, 121 (S.D.1994) (citations omitted). "Fact determinations will only be disturbed upon a showing that they were clearly erroneous." *New v. Weber,* 1999 SD 125, ¶ 5, 600 N.W.2d 568, 572 (citing *Loop v. Class,* 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191). "However, ineffective assistance of counsel is a mixed question of fact and law on which this Court can substitute its own judgment as to whether counsel's representation was ineffective." *Davi v. Class,* 2000 SD 30, ¶ 15, 609 N.W.2d 107, 112 (citations omitted). We review the constitutional and legal claims de novo. See *State v. Dillon,* 2001 SD 97, ¶ 12, 632 N.W.2d 37, 43; *Ramos v. Weber,* 2000 SD 111, ¶ 12, 616 N.W.2d 88, 92.

### Conviction 1

[¶ 11.] **1. Whether trial counsel was ineffective for failing to properly investigate witnesses who could have testified at the suppression hearing.**

[¶ 12.] Hirning claims that Gerdes was ineffective in failing to investigate whether two witnesses should have been called at the suppression hearing. Hirning also claims that Gerdes was ineffective for failing to call Hirning at the suppression hearing.

[¶ 13.] We utilize the two-prong test set forth in *Strickland v. Washington* to review ineffective assistance of counsel claims. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

[¶ 14.] Furthermore, "[t]o establish prejudice from counsel's failure to investigate a potential witness, [Hirning] must show that the witness would have testified and that their testimony 'would have *probably* changed the outcome of the trial.'" *Siers,* 1998 SD 77, ¶ 25, 581 N.W.2d at 497 (citing *Hadley v. Groose,* 97 F.3d 1131, 1135 (8th Cir.1996) (citation omitted)). We therefore "consider: '(1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution.'" *Id.* (citing *McCauley–Bey v. Delo,* 97 F.3d 1104, 1106 (8th Cir.1996)). "[T]here is no prejudice if, factoring in the uncalled witnesses, the government's case remains overwhelming." *Id.* ¶ 27 (citations omitted).

[¶ 15.] Hirning first asserts that Gerdes was ineffective for failing to properly investigate whether Billy Mills and

Denise Mills should have been called at the suppression hearing to challenge the admissibility of the drugs found in Hirning's pants pocket. Hirning contends that Billy Mills, the front-seat passenger, would have negated Denise Mills's on-the-scene admission that other drugs previously found in the vehicle were owned by all three. Negating Denise's on-the-scene admission could have called into question the "joint possession" fact that the highway patrol officer used to establish probable cause to search Hirning.[1] Hirning essentially argues that, by impeaching Denise Mills's on-the-scene admission, the drugs found in his pocket would have been suppressed.

[¶ 16.] To support this argument, Hirning points out that Billy Mills later pleaded guilty to possession of the "other drugs" that were found by the patrol officer in the car. Billy Mills also testified at the habeas hearing that he claimed sole ownership of those drugs. Although this evidence might now impeach Denise's statement of joint ownership, this after-the-fact evidence would not have eliminated probable cause at the time of the stop. A number of facts support this conclusion. First, Billy Mills did not claim that Denise failed to make the joint ownership statement. He merely claimed ownership and denied hearing Denise tell the officer that the drugs belonged to everyone. Thus, the impeachment value was limited. Second, Billy admitted that, had he been called to testify at Hirning's suppression hearing, he would have been able to offer incriminating testimony against Hirning. Nevertheless, Hirning argues that Gerdes was ineffective in failing to investigate and call

Denise and Billy Mills at the suppression hearing.

[¶ 17.] In habeas cases challenging an attorney's investigation, "the reasonableness of counsel's performance is to be *evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.* The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Brakeall v. Weber,* 2003 SD 90, ¶ 15, 668 N.W.2d 79, 84 (emphasis added) (quoting *Bradley v. Weber,* 1999 SD 68, ¶ 19, 595 N.W.2d 615, 621).

It is well settled that in reviewing trial counsel's performance, it is not this Court's function to second guess the decisions of experienced trial attorneys regarding matters of trial tactics unless the record shows that counsel failed to investigate and consider possible defenses and to exercise their good faith judgment thereon. The determination does not rest on whether this Court finds the tactics or strategy employed to be the most advantageous but, instead, whether counsel satisfied the *Strickland* standard of competence. In reviewing whether counsel acted reasonably we analyze counsel's performance *in light of the circumstances then existing.* Neither the result reached nor second guessing with the benefit of hindsight determine the reasonableness of counsel's performance.

While this court will not compare counsel's performance to that of some idealized "super-lawyer" and will respect the integrity of counsel's decision in choos-

---

1. The relevant statement by Denise Mills was made to the officer at the time of the stop. The officer asked Denise who owned the drugs that were found in the vehicle. Denise told the officer that the drugs "belonged to basically all of them." Based on this answer

and the behavior of the occupants of the car before and during the stop, the officer conducted a pat-down search of Hirning. Four baggies containing a substance later confirmed to be methamphetamine were found in Hirning's pants pocket.

ing a particular strategy, these considerations must be balanced with the need to insure that counsel's performance was within the realm of competence required of members of the profession. An attorney must make a reasonable investigation *and must make reasonable decisions to forego particular investigations.* A difference in trial tactics does not amount to ineffective assistance of counsel.

*Id.* ¶ 16 (emphasis added) (quoting *Randall v. Weber*, 2002 SD 149, ¶ 7, 655 N.W.2d 92, 96).

[¶ 18.] The reasonableness of Gerdes's decision under the circumstances existing at the time of the suppression hearing was described by the habeas court. The court first found that Gerdes did investigate the matter by talking to Mills' counsel. The court also found that at the time of Hirning's suppression hearing, Denise and Billy Mills were represented by counsel and were facing similar charges to those Hirning was charged with. Thus, the habeas court found that it was unlikely that either witness could be called. The habeas court further found that, even if they were called, Billy's evidence would have been impeached and it would not have affected the outcome of the suppression motion. The habeas court found:

> Although Mr. Gerdes did not speak directly to Mr. and Mrs. Mills, he did contact their counsel and did learn generally what they would say if required to testify. Although Billy Mills now testifies that the controlled substance under the front passenger seat of the vehicle was his and that he told the officer it was his on the night the vehicle was stopped, there has been no previous evidence presented in court to support those statements. The officer testified at the Suppression Hearing that only Denise Mills made a statement as to the

ownership of the controlled substance. It is not the testimony that Mr. Mills now presents at the Habeas Hearing that is controlling, but rather what testimony Mr. Gerdes would have been able to elicit at the time of the Suppression Hearing. Obviously, due to the pending criminal charges, Billy Mills could not have been forced to take the stand at the Suppression Hearing and to incriminate himself. *Denise Mills' assertions as to the ownership of the controlled substance were already known to the officer, to the State and to Mr. Gerdes and were made known through testimony and playing of the videotape.* Although Mr. Mills testified that he did not hear Denise Mills say that the methamphetamine was owned by all of the parties, clearly *that statement was supported by the testimony and tape played at the Suppression Hearing.*

(Emphasis added.)

[¶ 19.] These findings are not clearly erroneous. They also support the habeas court's conclusion that Gerdes investigated the matter, considered possible defenses, and exercised good faith judgment in not calling Billy and Denise. First, although Gerdes acknowledged that he did not personally interview Denise or Billy Mills, he testified that either the Mills' attorney would not allow them to talk, or they would have offered unfavorable evidence against Hirning. Thus, he clearly investigated the matter and learned that their testimony could not be used. Second, it is quite apparent that, in light of the videotape, Billy's after-the-fact claim of exclusive ownership would not have changed the outcome of the suppression hearing. As we determined in *Hirning I*, once Denise made her statement of joint ownership to the officer, the officer had probable cause to search all of the occupants in the vehicle. Apparently, her statement was also

confirmed by the videotape. Therefore, even if Billy's subsequent admission conflicted with Denise's earlier on-the-scene statement, Billy's subsequent admission would not have eliminated the probable cause presented at the scene and observed by the officer. As the habeas court pointed out, "[e]ven if [Hirning] and Billy Mills had testified at the Suppression Hearing, there [was no] reason to believe that the [suppression] court would [have found] their testimony more credible than that testimony provided by the [patrolman] and through the tape." We agree.

■■■ [¶ 20.] We finally note that, with respect to Hirning's possible testimony, the habeas court found that "Hirning participated in the decision not to testify at [his own] suppression hearing." Consequently, Hirning has not overcome the presumption that Gerdes' performance was sound trial strategy, and if not, that it was not prejudicial.

### Convictions 3 and 4

[¶ 21.] 2. **Whether the judge who signed the search warrant had an appearance of bias when he presided at the suppression hearing reviewing the same warrant.**

■■■ [¶ 22.] Hirning challenges the third and fourth convictions on due process grounds. Hirning asserts that he was denied due process because Judge Von Wald signed the search warrant for the search of Hirning's home, and later, presided at the suppression hearing upholding the warrant. Hirning does not argue that Judge Von Wald was actually biased, but instead, argues that bias should be presumed in cases where there is "such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Taylor v. Hayes*, 418 U.S. 488,

501, 94 S.Ct. 2697, 2704, 41 L.Ed.2d 897, 909 (1974) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 588, 84 S.Ct. 841, 849, 11 L.Ed.2d 921, 930 (1964)). Hirning asserts that his case presents that likelihood because "[a] judge who reviews his own decision to issue a warrant labors within a procedural system that creates an implied bias."

[¶ 23.] Hirning relies on *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), for the proposition that due process can be violated even when no actual bias is proven. In *Murchison*, the United States Supreme Court found a due process violation when a judge sat as a "judge-grand jury" and later presided at a contempt hearing in which witnesses were found in contempt for their conduct before him. The Supreme Court noted that:

> "Every procedure which would offer a possible temptation to the average man as a judge ... not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law." ... Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice."

*Id.* at 136, 75 S.Ct. 623 (internal citations omitted).

[¶ 24.] *Murchison*, however, does not apply to the present situation. In *Murchison*, the judge "had conducted [ ] *secret* 'one-man grand jury' proceedings." *Id.* (emphasis added). Therefore, the Court stated that:

> As a practical matter it is difficult if not impossible for a judge to free himself from the influence of what took place in his 'grand-jury' secret session. His recollection of that is likely to weigh far

more heavily with him than any testimony given in the open hearings.

*Id.* at 138, 75 S.Ct. 623.

Thus the judge whom due process requires to be impartial in weighing the evidence presented before him, called on his own personal knowledge and impression of what had occurred in the grand jury room and his judgment was based in part on this impression, the accuracy of which could not be tested by adequate cross-examination.

*Id.* Even more significantly, the judge in that grand jury proceeding was acting as the investigator and the charging authority. Under those circumstances, the Supreme Court noted that:

It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations. Perhaps no State has ever forced a defendant to accept grand jurors as proper trial jurors to pass on charges growing out of their hearings. A single 'judge-grand jury' is even more a part of the accusatory process than an ordinary lay grand juror. Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused.

*Id.* at 137, 75 S.Ct. 623. Obviously, none of these *Murchison* concerns are present in this case.

■■ [¶ 25.] In this case, Judge Von Wald initially reviewed an affidavit that was prepared outside his presence. No witnesses were required to testify in front of Judge Von Wald, and the affidavit only contained written information from outside sources. Therefore, Judge Von Wald was only required to determine if legally, that affidavit established probable cause for the issuance of the warrant. In performing that task "a judge does not vouch for the veracity of the affidavit given in support thereof; [the judge] simply determines that the information in the affidavit is sufficient to provide probable cause to believe that the informant was giving truthful information." *North Carolina v. Monserrate,* 125 N.C.App. 22, 479 S.E.2d 494, 501 (N.C.App.1997) (citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Consequently, in the subsequent suppression hearing, Judge Von Wald was only required to reconsider his earlier legal determination, and none of the due process dangers described in *Murchison* were present.

■■ [¶ 26.] Moreover, "[t]he opportunity to disqualify a judge is statutory ... and not a constitutional right, except as it may be implicit in a right to a fair trial." *State v. Hoadley,* 2002 SD 109, ¶ 32, 651 N.W.2d 249, 257 (quoting *State v. Goodroad,* 1997 SD 46, ¶ 25, 563 N.W.2d 126, 132). The South Dakota Code of Judicial Conduct provides the rule for disqualification:

A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, included but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party[.]

Canon 3E(1). However, "[t]he decision to preside over a case lies within the sound discretion of the trial judge." *Hoadley,* 2002 SD 109, ¶ 32, 651 N.W.2d at 257. Furthermore, a "judge is presumed to be impartial, and the party seeking disqualification bears the substantial burden of proving otherwise." *Id.* (quoting *United States v. Walker,* 920 F.2d 513, 517 (8th Cir.1990) (citing *Ouachita Nat'l Bank v. Tosco Corp.,* 686 F.2d 1291, 1300 (8th Cir. 1982))). Because the right to disqualify is statutory, because the decision to disquali-

fy is discretionary, and because Hirning does not assert actual bias or prejudice, his constitutional right to due process is not implicated here. Because his constitutional rights are not implicated, he is not entitled to a habeas review of this issue.

[¶ 27.] Nevertheless, because of the importance of the issue, and because this Court has not previously reached the merits of the implied bias question, we now address it. Although not directly on point, we have previously foreshadowed that:

> [T]he issue has been resolved directly and explicitly that a judge is not disqualified from later participation in a case, even where the suppression of physical evidence is the key issue, by virtue of the fact that [the same judge] issued the search and seizure warrant. *Waupoose v. State*, 46 Wis.2d 257, 174 N.W.2d 503, 504 (1970); *Arnold v. Commonwealth*, 421 S.W.2d 366, 366–67 (Ky.1967); *State ex rel. French v. Hendricks Superior Court*, 252 Ind. 213, 247 N.E.2d 519, 525 (1969); *State v. Smith*, 113 N.J.Super. 120, 273 A.2d 68, 78 (1971); *State v. Toce*, 6 Conn.Cir.Ct. 192, 269 A.2d 421, 422–423 (1969); *Irwin v. State*, 441 S.W.2d 203, 208–209 (Tex.Crim.App. 1968).

*State v. Hoeft*, 1999 SD 24, ¶ 12, 594 N.W.2d 323, 326 n. 4 (quoting *Trussell v. State*, 67 Md.App. 23, 506 A.2d 255, 256 (1986)) (quoting *Peaper v. State*, 14 Md. App. 201, 286 A.2d 176, 180–81 (1972), *cert. denied*, 409 U.S. 987, 93 S.Ct. 342, 34 L.Ed.2d 253)). Other jurisdictions also permit the judge who issued a challenged search warrant to rule on the motion to suppress. *See* 5 Wayne R. LaFave, Search and Seizure § 11.2(e) (3d ed. 1996 & Supp. 2004) (citing *Holloway v. State*, 293 Ark. 438, 738 S.W.2d 796, *reh'g denied* 293 Ark. 438, 742 S.W.2d 550 (1987)) (trial judge may rule on search warrant he issued; "We agree with the decisions of other jurisdictions holding that Canon 3C(1)(a) of the Code of Judicial Conduct is not meant to preclude participation of a judge who has obtained knowledge of a case through previous judicial participation in it"); *People v. Liberatore*, 79 N.Y.2d 208, 581 N.Y.S.2d 634, 590 N.E.2d 219 (1992) ("A Judge who issued a warrant is not prohibited from entertaining a motion to suppress evidence seized pursuant to that warrant nor is that Judge the only one who may entertain such a motion"); *People v. McCann*, 85 N.Y.2d 951, 626 N.Y.S.2d 1006, 650 N.E.2d 853 (1995) (rejecting defendant's contention that the judge "should have recused himself from ruling on the validity of a search warrant he issued," as that "decision is a matter of individual conscience for the court"). *See also* 2 John Wesley Hall, Jr., *Search and Seizure* § 45.45 (3d ed. 2000).[2]

▆▆▆▆ [¶ 28.] Although this general rule is well established, we also agree with the Eighth Circuit's caveat that "[w]e have some doubts about the practice, and our affirmance in this case is not to be interpreted as approving it." *United States v. Alton*, 982 F.2d 285, 287 (8th Cir.1992). Ultimately, we believe that though "it is the better practice to allow a different judge to rule upon the validity of such a warrant ... it does not require a different

---

**2.** Citing *Holloway*, 293 Ark. 438, 738 S.W.2d 796, *reh'g denied*, 293 Ark. 438, 742 S.W.2d 550; *Toce*, 6 Conn.Cir.Ct. 192, 269 A.2d 421, 422–23, *petition denied*, 158 Conn. 667, 259 A.2d 649; *French*, 252 Ind. 213, 247 N.E.2d 519, 525; *Arnold*, 421 S.W.2d 366, 366–67; *Trussell*, 67 Md.App. 23, 506 A.2d 255, 256–57, *cert. denied*, 306 Md. 514, 510 A.2d 260;

*Smith*, 113 *N.J.Super.* 120, 273 A.2d 68, 78, *cert. denied*, 59 *N.J.* 293, 281 A.2d 806; *Hawkins v. State*, 586 S.W.2d 465 (Tenn.1979); *Irwin*, 441 S.W.2d 203, 208–09, *cert. denied*, 394 U.S. 973, 89 S.Ct. 1454, 22 L.Ed.2d 752; *Waupoose*, 46 Wis.2d 257, 174 N.W.2d 503, 504; *United States v. Cansdale*, 7 MJ 143 (CMA 1979).

judge to rule upon the validity of a search warrant." *Monserrate*, 479 S.E.2d at 501 (citation omitted). Therefore, even with this caveat, we find no implied bias or due process violation here.

**[¶ 29.] 3. Whether the affidavit in support of the search warrant lacked probable cause.**

[¶ 30.] Hirning was convicted of the second and third offenses on stipulated facts. He attempted to appeal, but failed to perfect his appeal in a timely manner. Hirning now attempts to raise Fourth Amendment trial issues. He specifically claims that the trial court's review at the suppression hearings exceeded the four corners of the affidavit; that the affidavit contained stale information; that the informants were not bolstered in the affidavit; and that material information was excluded from the affidavit. The habeas court rejected each of these arguments. The habeas court concluded that as a matter of law and "[u]nder the totality of the circumstances, probable cause existed for the issuance of the search warrant, and the Affidavit was not deficient for lack of probable cause."

[¶ 31.] At the outset we observe that generally, "[i]ssues involving probable cause for searches and seizures may not be litigated collaterally in habeas proceedings" if they were considered by the trial court. *Scott v. Class*, 532 N.W.2d 399, 402 (S.D.1995). Therefore, if the probable cause issue was raised and rejected by the trial court, it cannot be reviewed on the merits in this habeas proceeding. *Id.* Hirning, however, contends that some of his Fourth Amendment claims were not effectively raised. Therefore, we review the procedural history of the trial court's suppression decision only to consider the Fourth Amendment within the ineffective assistance claim.

[¶ 32.] Attorney Roubideaux, Hirning's first lawyer on these charges, filed the first suppression motion. In the motion he argued that the property listed in the affidavit was not described with sufficient particularity. During the subsequent suppression hearing, Roubideaux orally amended the motion to also challenge the affidavit on grounds that it failed to establish probable cause. The motion was denied.

[¶ 33.] Hirning's next attorney also filed motions to suppress. Palmer's motions included a request for a reconsideration of the Roubideaux motion to suppress. As to that request to reconsider, the trial court stated:

> I'm going to find that we've already had a hearing on the probable cause issue. Those matters could have been raised at [the previous suppression hearing] by Mr. Roubideaux, many—or some of those matters were raised or implied by Mr. Roubideaux, and the [Court has] found no basis for the same. Therefore, the motion for reconsideration is going to be denied today.

[¶ 34.] This record does not clearly indicate whether all available Fourth Amendment issues were raised by Roubideaux. At a later telephonic hearing, the State asked Judge Von Wald to clarify whether any suppression issues were waived by Roubideaux. The only clarification was the trial court's statement that it:

> [W]ould find that I did ask Mr. Roubideaux at the September 15, 1999 hearing if there was anything else that he wanted suppressed. He did respond "no" there was not. So I would want to make that finding on the record and that there has been that prior communication between the Court and the defendant's counsel regarding this same issue.

[¶ 35.] From this record, we are unable to definitively determine whether all prob-

able cause issues now asserted were actually litigated in the trial court proceedings.[3] Nevertheless, Hirning's request for habeas relief must fail. To the extent that Hirning's Fourth Amendment issues were raised and considered by the trial court, they are not reviewable "on the merits during habeas review." *Scott*, 532 N.W.2d at 402 (citing *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir.1994)). And, to the extent that they were not raised and decided thereby invoking Hirning's ineffective assistance claim, we note that "the independent source doctrine [ ] allow[s] partially tainted warrants if the remaining untainted information establishes probable cause." *State v. Boll*, 2002 SD 114, ¶34, 651 N.W.2d 710, 719 (citations omitted). The habeas court concluded that under the totality of the circumstances, probable cause existed for the issuance of the search warrant. Our de novo review of the affidavit, absent the objectionable inclusions, leads us to the same conclusion. We therefore find that any issues not raised would not have invalidated the warrant.

[¶ 36.] **4. Whether trial counsel was ineffective for failing to adequately raise Fourth Amendment and Due Process claims, and for having a conflict of interest.**

[¶ 37.] Hirning first reiterates the preceding argument that he was prejudiced by Roubideaux's failure to raise his appellate Fourth Amendment suppression issues. Hirning continues to assert that, had those issues been raised, "all of the evidence used against [him] would have been suppressed." However, as we previously indicated, from our independent review of the affidavit, we find no prejudice because the affidavit established probable cause apart from any improper considerations.

[¶ 38.] Hirning next alleges a due process violation because Roubideaux failed to ask for Judge Von Wald's disqualification. However, the habeas court pointed out that Roubideaux's decision to not ask Judge Von Wald to recuse himself was a tactical decision. The habeas court noted that at the time Roubideaux would have made the recusal motion:

> Judge Dobberpuhl had recused himself from this case and one of the remaining two circuit judges, Judge Lovrien, had already sentenced [Hirning] to concurrent ten year and five year sentences in the penitentiary. Obviously a tactical decision would be in order whether [Hirning] would benefit more from continuing with the case in front of Judge Von Wald or attempting to remove Judge Von Wald and then possibly facing a situation where Judge Lovrien was again assigned to the case and [Hirning] would then be unable to remove Judge Lovrien under state statutes.

Considering this tactical difficulty, we see no denial of effective assistance of counsel in the decision to not ask for a recusal.

[¶ 39.] Hirning finally argues that Roubideaux was ineffective because Roubideaux had a concurrent conflict of interest in representing both Hirning and Nolter. However, the State filed a motion to require separate counsel, and Hirning

---

**3.** Palmer's other motion was based on the allegation that the warrant contained false or fraudulent statements. The trial court held that Hirning "would have to show by a preponderance of the evidence that those false statements knowingly and intelligently occurred or were recklessly made with disregard for the truth." The trial court ultimately determined that the affidavit was not prepared with the purpose of misleading the court, and that Hirning failed to meet his burden of proof. Thus, the issues raised by the Palmer motion were decided by the trial court.

filed an affidavit consenting to Roubideaux's initial concurrent representation.[4]

[¶ 40.] Hirning, however, also points out that after Hirning's suppression hearing, Hirning retained Palmer as his new counsel. Thereafter, Roubideaux continued in his representation of Nolter, and at Nolter's sentencing hearing, "Roubideaux was blaming everything on Hirning." Roubideaux made the following comments regarding Hirning:

(1) "I think that the Court should look at the broader picture of a young man that was addicted to methamphetamine and got involved with the Hirning operation."

(2) "The Hirning residence is not the residence of Shane Nolter. That is not his residence; that's not his operation."

(3) "There were many visitors that came to the Milo Hirning place, and Shane's visits were to obtain the drugs that he was addicted to and using himself."

These comments, reflecting adversely upon Hirning, were made at Nolter's sentencing hearing in front of Judge Von Wald. Thus, Hirning argues that when he later faced Judge Von Wald for a court trial and sentencing in his case, "he had to exist in a world in which the Court had heard the above comments."

[¶ 41.] We initially note that we need not decide whether any attorney-client ethical obligations were breached by Mr. Roubideaux's use of these arguments against a former client.[5] In habeas corpus, we confine our review to jurisdictional and consti-

4. Hirning's affidavit stated:
Milo Walter Hirning, being first duly sworn, on oath deposes and states:
That he is the defendant in the above-entitled case and makes this affidavit at the request of his attorney, Ramon A. Roubideaux of Rapid City, South Dakota.
After consultation with said attorney, and being advised of the South Dakota Rules of Professional conduct, Rule 1.7(a)(1)(2) and Rule 1.8 pertaining to conflicts of interest, affiant has advised said attorney that he is unaware of any conflict even though the respective pending charges arise from the same time of his contacts with Shane Nolter at his home in Aberdeen, South Dakota, and do not believe at this time that there could be any adverse relations arising between the two cases and clients, and affiant believes said attorney at this time states that the circumstances arising from their respective relationships will not be affected.
Affiant also has been advised by his said attorney that as soon as the discovery material is received and his attorney aforesaid has reviewed same with both clients, and if there appears to be any adverse interest he will advise affiant and withdraw from representation of Shane Nolter. Otherwise affiant consents to both representations.

5. We do observe, however, that the South Dakota Ethics Committee has concluded that "[a]bsent consent after consultation, an attorney may not represent a client whose interest is adverse to a former client." SD Ethics Comm., Formal Op.2003–7. That opinion is premised on Rule 1.9(a), which provides:

A lawyer who formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
The comments to the rule indicate that:
After termination of a client-lawyer relationship, a lawyer may not represent another client except in conformity with this Rule. The principles in Rule 1.7 determine whether the interests of the present and former client are adverse.
The second aspect of loyalty to client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters.
Disqualification from subsequent representation is for the protection of clients and can be waived by them. A waiver is effective only if there is disclosure of the circumstances, including the lawyer's intended role in behalf of the new client.

tutional issues. Therefore, we only determine whether Roubideaux's representation was constitutionally ineffective, assuming he breached an ethical conflict of interest rule.

 [¶ 42.] Here, the most serious potential ethical violation and conflict would have been a disclosure of confidential client information from the prior representation. However, the habeas court did "not find that [the] statements [at issue] could have originated only from privileged communication occurring during Mr. Roubideaux's representation of [Hirning]." We agree. Furthermore, to the extent any other potential violations occurred, we note that the trial court found Hirning guilty *based on stipulated facts*. Therefore, the trial court made its determinations upon stipulated facts and a sentencing hearing,[6] rather than the argument it heard in Nolter's case. Consequently, we see no prejudice. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Ramos,* 2000 SD 111, ¶ 12, 616 N.W.2d at 93 (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699). We hold that, even assuming Hirning has demonstrated some conflict of interest, he has shown no constitutional prejudice.

[¶ 43.] Affirmed.

[¶ 44.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.

6. Hirning does not challenge the severity of his sentence in this appeal.